# UNITED AIR LINES TRANSPORT CORPORATION et al.
# v. INDUSTRIAL COMMISSION et al.

No. 6680. Decided August 31, 1944. (151 P. 2d 591.)

Rehearing denied Dec. 13, 1944.

See 31 C. J. S. Evidence Sec. 19; 20 Am. Jur. 70.

*Arthur E. Moreton* and *Elias L. Day,* both of Salt Lake City, for plaintiffs.

*Grover A. Giles,* Atty. Gen., and *Arthur H. Nielsen* and *Zar E. Hayes,* Asst. Attys. Gen., for defendants.

TURNER, Justice.

This case comes before us on a writ of certiorari to review the decision of the Industrial Commission of Utah which requires the Hartford Accident and Indemnity Company to pay to the Treasurer of Utah for the use and benefit of the Combined Injury Benefit Fund the sum of $1002.06, pursuant to 42-1-64 (1), U. C. A. 1943, by reason of the fatal injury suffered by Neva Cantwell, employed by the plaintiff United Air Lines Transport Corporation.

The material facts are not in dispute. Those pertinent to the problems presented here are as follows and are taken from the findings of facts of the Commission and from the files of the case now before this court.

Neva Cantwell was in the employ of the United Air Lines Transport Corporation on the 1st day of May, 1942, as stewardess, on which day she received injuries which resulted immediately in her death. The injuries were received at the time, of the fatal crash of the United Air Lines' transport plane which crashed into the mountains just north of Ensign Peak in Salt Lake County, Utah; that the said injuries arose out of and in the course of her employment, were proximately caused thereby, and occurred while the employe was performing services arising out of and incidental to her employment as stewardess.

Neva Cantwell entered into a contract of employment with the United Air Lines in Oakland, California, on October 24, 1941. She maintained a permanent residence at 1401 Floribunda Avenue, in Burlingame, California, which is situated just a few miles south of San Francisco. She was in the State of Utah in the normal course of her employment on a regularly scheduled trip which had its beginning

in California and was to cover a number of states, including Utah, as the trip proceeded east.

The employer was given due notice of the injury and death of Miss Cantwell. She had earned approximately $375 for the three months preceding January 1st, 1942, based upon an annual salary of $1500. The Hartford Accident and Indemnity Company was the insurance carrier for the United Air Lines and prior to the hearing held by the Industrial Commission of Utah and the making of its order had paid the burial expenses of Miss Cantwell in accordance with the order of the Industrial Accident Commission of California.

The files contain a copy of the agreement of employment which was executed at Oakland, California, October 24, 1941. There is also an affidavit of Mrs. Ethel Watts who, under oath, said she is the mother of Neva Cantwell who was killed in the wreck of the air liner near Salt Lake City on the 1st day of May, 1942, and that no person or persons were wholly or partially dependent for support on Miss Cantwell at the time of her death.

The files also contain copies of correspondence between the Industrial Commission of Utah and plaintiff United Air Lines. Also copies of findings and award made in two matters designated by numbers 77232 and 77031, made by the Industrial Accident Commission of California. The award in Case No. 77232 is that made because of the death of Donald W. Brown who was pilot of the air liner which crashed and in which Miss Cantwell met her death. The award in Case No. 77031 is that made because of the death of Harold W. Miner, First Officer on the air liner which crashed.

The files also contain two affidavits that offer some material matters. One is made by R. A. Whittaker, manager of the California Inspection Rating Bureau. The officer says that there was issued on October 1, 1941, a policy of workmen's compensation insurance wherein the Hartford Accident and Indemnity Company was the insurance carrier and the United Air Lines was the employer and that the policy covered the entire operations of the

United Air Lines; that it insured the payment of Workmen's Compensation benefits to all employes of the Corporation and the dependents of deceased employes for injuries or death sustained by such employes arising out of or in the course and scope of their employment during the calendar year following October 1, 1941, whether such injuries or death occurred in the State of California, or elsewhere, as long as the liability arose under the Workmen's Compensation Act of the State of California, and that the liability of the Hartford Accident and Indemnity Company to such employes under said policy is unlimited in amount and that said employer has provided extraterritorial coverage insuring its employes while working within the State of Utah temporarily on interstate flight trips where such employe was hired in California, maintained residence there and operated therefrom as a base.

The other affidavit is that of Wm. H. Hitchings, Pacific Department attorney for the Hartford Company. The last paragraph of the affidavit is: "That the extraterritorial provisions of the Utah Workmen's Compensation Act are recognized in the State of California and that employers and employes, who are covered in the State of Utah under circumstances similar to those in the present case, are likewise exempted from the application of the Workmen's Compensation Laws of the State of California."

Plaintiffs contend that the decision of the Industrial Commission of Utah is erroneous for several reasons. We think the alleged grounds can be summarized as follows: That its decision is contrary to law in that, first, the order is in violation of Sec. 1 of the 14th Amendment to the Constitution of the United States, and also in violation of Sec. 7 of Art. I of the Constitution of the State of Utah, providing that no person shall be deprived of property without due process of law. Second, that the Commission does not have jurisdiction over the matter. Third, because of the provisions of the Utah statutes, if the Commission could have had jurisdiction over the matter, it could not make the award for the reason the record affirmatively shows that

settlement was made for the death of Neva Cantwell under the Workmen's Compensation Act of California prior to any action by the Industrial Commission of Utah to assume jurisdiction. Fourth, that, whereas settlement was made under the workmen's compensation laws of California and such fact was made known to the Utah Commission, the decision of our Commission is in violation of Sec. 1, Art. IV, of the Constitution of the United States, providing that full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state.

The questions presented here invite a careful consideration of 42-1-43, 42-1-64, 42-1-52 and 42-1-52a of the Utah Code Annotated, 1943. 42-1-43 is as follows:

"Every employee mentioned in section 42-1-41 who is injured, and the dependents of every such employee who is killed, by accident arising out of or in the course of his employment, wheresoever such injury occurred, provided the same was not purposely self-inflicted, shall be entitled to receive, and shall be paid, such compensation for loss sustained on account of such injury or death, and such amount for medical, nurse and hospital services and medicines, and, in case of death, such amount for funeral expenses, as is herein provided."

This section is general in its nature and calls attention to other provisions of the Workmen's Compensation Law. The next section with which we are concerned is one providing for compensation to employes or their dependents when injury or death occurs beyond the boundaries of the State of Utah. This is 42-1-52, which reads as follows:

"If an employee *who has been hired or is regularly employed in this state* receives personal injury by accident arising out of and in the course of such employment outside of this state, he, or his dependents in case of his death, shall be entitled to compensation according to the law of this state. This provision shall apply only to those injuries received by the employee within six months after leaving this state, unless prior to the expiration of such six months period the employer has filed with the Industrial Commission of Utah notice that he has elected to extend such coverage a greater period of time."

42-1-52a provides:

"Any employee who has been hired outside of this state and his employer shall be exempted from the provisions of this act while such employee is temporarily within this state doing work for his employer if such employer has furnished workmen's compensation insurance coverage under the workmen's compensation or similar laws of a state other than Utah, so as to cover such employee's employment while in this state; provided the extra-territorial provisions of this act are recognized in such other state and provided employers and employees who are covered in this state are likewise exempted from the application of the workmen's compensation or similar laws of such other state. The benefits under the workmen's compensation act or similar laws of such other state shall be the exclusive remedy against such employer for any injury, whether resulting in death or not, received by such employee while working for such employer in this state.

"A certificate from the duly authorized officer of the industrial commission or similar department of another state certifying that the employer of such other state is insured therein and has provided extra-territorial coverage insuring his employees while working within this state shall be prima facie evidence that such employer carries such compensation insurance."

The alleged right of the Commission to order the payment of $1002.06 to the Treasurer of the State of Utah for the use and benefit of the Combined Injury Benefit Fund by plaintiff Hartford Accident and Indemnity Company is based primarily upon 42-1-64, U. C. A. 1943, which follows:

"In case injury causes death within the period of three years, the employer or insurance carrier shall pay the burial expenses of the deceased as provided herein, and further benefits in the amounts and to the persons as follows:

"(1) If there are no dependents, the employer and insurance carrier shall pay into the state treasury a sum equal to 20 per cent of the amount provided in subdivision (2) of this section. Any claim for compensation must be filed with the commission within one year from the date of the death of the deceased, and, if at the end of one year from the date of the death of the deceased no claim for compensation shall have been filed with the commission, the payment of a sum equal to 20 per cent of the amount provided in subdivision (2) of this section shall be paid at that time into the state treasury by

the employer or the insurance carrier. Such payment shall be held in a special fund for the purposes provided in sections 42-1-65 and 42-1-66; the state treasurer shall be the custodian of such special fund, and the commission shall direct the distribution thereof.

"(2) If there are wholly dependent persons at the time of the death, the payment shall be 60 per cent of the average weekly wage, but not to exceed a maximum of $16 per week, plus 10 per cent of said award for each dependent minor child under the age of eighteen years, up to and including five such dependent minor children, to continue for the remainder of the period between the date of the death and six years after the date of the injury, and shall not amount to more than a maximum of $7,500 or less than a minimum of $2,000. * * *"

This section deals with payment of burial expense in case of death and for payment of money to the Treasurer of Utah where the deceased employe, killed in the course of employment, left no dependents. The first provision of the section grants burial expense almost identical with the provision complied with by the Hartford Company herein under the order of the Industrial Accident Commission of California. The California Commission, judging from the files we have before us, made no order for payment of any money by the Hartford Company because Neva Cantwell left no dependents.

At the hearing had before the Utah Commission, the workmen's compensation laws of the State of California were not offered in evidence and neither the Utah Commission nor this court can take judicial notice of them. We can only presume that orders made by the California Commission and before us in the official files are according to the law of our sister State. Where the laws of a foreign State are not offered in evidence, we must conclude that the laws of such State are the same as those of the forum. *Grow* v. *Oregon Short Line R. Co.*, 44 Utah 160, 138 P. 398, Ann. Cas. 1915 B, 481; *Shurtliff* v. *Oregon Short Line R. Co.*, 66 Utah 161, 241 P. 1058; *Johnson* v. *Falen et al.*, 1944, Idaho, 149 P. 2d 228.

With this statement of facts, summary of issues and provisions of pertinent statutes before us, we shall endeavor

to analyze our problems. The fundamental principles of the law of workmen's compensation were unknown to the people and the times that produced our common law. Workmen's compensation is the natural product of necessity. The numerous hazards which accompanied the growth of industry with the development of power-driven machinery antiquated the common law. Need for a new method and means of giving greater protection and security to the worker and his dependents against injury and death occurring in the course of employment gave birth to legislative law. This creature of the legislature with improvements and definements is now commonly called workmen's compensation.

Its existence is not due to the needs nor influence of employes alone. It has been promoted and sustained for its benefits to both capital and labor and the general good done society by its usefulness. It bases its right to existence in the police power of the State. *Park Utah Consol. Mines Co. et al.* v. *Industrial Comm.*, 84 Utah 481, 36 P. 2d 979. Workmen's compensation is the result of compromise made between master and servant, chaperoned by society, for the benefit of all.

This statute law is now found almost wherever commerce and industry are found. Judged by the years from the pioneer enactments here in the United States, workmen's compensation laws are still in their youth. The states were hesitant to adopt the law. The first notable movement for its adoption was in 1915. The general purpose sought to be accomplished by the various legislatures is practically the same, but the statutes enacted have been varied. This fact has caused great confusion, and for considerable time brought problems of constitutionality and jurisdiction before appellate tribunals. However, the dire need for the law resulted in immediate court action to determine questions of general validity, questions relative to extraterritorial jurisdiction and the creation of special funds such as the one with which we are concerned in the case at bar.

There is considerable difference between the statutes of some of the states, especially as to extraterritorial jurisdiction. This has caused considerable confusion and this phase of the law is still a subject of controversry. However, the right to enact workmen's compensation laws is now well settled. The statutes have repeatedly been held to be constitutional. See 28 R. C. L. 739-741 and annotations. The Utah law has been held to be valid. *Reteuna* v. *Industrial Comm.*, 55 Utah 258, 185 P. 535; *Utah Copper Co.* v. *Industrial Comm.*, 57 Utah 118, 193 P. 24, 13 A. L. R. 1367; *United States Smelting, R. & Min. Co.* v. *Evans*, 10 Cir., 35 F. 2d 459, certiorari denied 281 U. S. 744, 50 S. Ct. 350, 74 L. Ed. 1157.

In the case of *Cudahy Packing Co. of Neb.* v. *Industrial Comm.*, 60 Utah 161, 207 P. 148, 152, 28 A. L. R. 1394, this court, when speaking of the constitutionality of the Workmen's Compensation law of this State, said, it "is not an open question in this state." The right to enact workmen's compensation laws, providing for extraterritorial effect, as that contained in the Utah statutes, is well established. There are numerous decisions holding such provisions to be valid. Also such laws providing for creation and maintenance of a special fund as set up by the Utah statute, 42-1-64, U. C. A. 1943, have, almost universally, been held constitutional.

In the case of *Sheehan C.* v. *Shuler*, 265 U. S. 371, 44 S. Ct. 548, 68 L. Ed. 1061, 35 A. L. R. 1056, a statute providing for a special fund was held valid. The decision in this case, written by Mr. Justice Sanford, holds that Workmen's Compensation Law providing compensation for employes injured without negligence of the employer is constitutional and that the creation of a special fund where the employe dies without dependents is not taking property without due process of law.

In our summary of errors claimed by plaintiffs herein, the first is that the Workmen's Compensation Law and the action of the Industrial Commission complained of took

property without due process of law. The great weight of the decisions of our appellate courts during the last twenty-five years is that an employer or insurance carrier is not deprived of property without due process of law by a workmen's compensation act requiring compensation for death of an employe. This court has held that the workmen's compensation statute is not unconstitutional as a denial of equal protection of laws, nor as taking property without due process. See *Salt Lake City* v. *Industrial Comm.*, 58 Utah 314, 199 P. 152, 18 A. L. R. 259, decided June 11, 1921; also see *Cudahy Packing Co. of Neb.* v. *Parramore*, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532.

We shall now turn our attention to problems presented by the second ground of objection considered in view of the provisions of 42-1-52 and 42-1-52a and the admitted facts before us. The first section referred to provides for compensation for an employe who has been hired in Utah or who is regularly employed in this State who is injured or killed outside of this State. Our concern in this section at this time is that it provides for extraterritorial rights and we must consider this in our analysis of the following section providing for exemption and reciprocity.

The first paragraph of 42-1-52a states: "Any employee who has been hired outside of this state and his employer shall be exempted from the provisions of this act while such employee is temporarily within this state doing work for his employer." Then the section contains certain conditions: First, if the employer has furnished workmen's compensation insurance coverage for employes under workmen's compensation or similar laws of a State other than Utah so that the employes are covered with protection while in Utah. Second, and that the extraterritorial provisions of this act are recognized in the other state. Third, and that employers and employes who are covered in this State are likewise exempted from such laws of the other State.

Our statute then provides that if such be the case, then

the Workmen's Compensation Act or similar laws of such other State *shall be the exclusive remedy* against such employer *whether the accident resulted in death or not.* Then follow provisions for proof of such other law and coverage.

The first paragraph raises no problem. Neva Cantwell, as heretofore stated, was employed in California by a corporation whose home is in California, and she was temporarily in the State of Utah. From the record and files before us, we know that California at the times herein involved had workmen's compensation laws. The stipulation of facts contained in the files and the records of the award made in Case No. 77232 covering the death of Donald W. Brown and that in Case No. 77031 made because of the death of Harold W. Miner, killed in the same accident in which Neva Cantwell met her death, together with payment of her burial expense, establish this as a fact. That these awards were made and paid where the deaths occurred in Utah is evidence that employes of our sister State were protected against accident while in Utah.

The affidavits of R. A. Whittaker and Wm. H. Hitchings, which are found in the files in this cause and which are not controverted, show that from October 1, 1941, and for the following year, the Hartford Accident and Indemnity Company had issued a policy of workmen's compensation insurance in favor of the United Air Lines Transport Corporation and that by such policy the insurer agreed to pay workmen's compensation benefits to all employes of the United Air Lines for injuries or death sustained by such employes arising out of or in the course and scope of their employment, whether such injuries or death occurred in the State of California or elsewhere, so long as the liability arose under the workmen's compensation laws of the State of California.

From the affidavits we find that full compliance with the laws of California relative to the deaths involved in the accident in Utah, with which we are concerned, was made by the Hartford Company. The affidavit of Wm. H. Hitch-

ings also says that extraterritorial provisions of the Utah Workmen's Compensation Act are recognized in the State of California and under circumstances similar to those in the present case. The record, as far as we can ascertain, contains no denial of this.

While not being allowed to take judicial notice of California's Workmen's Compensation Law, from the evidence before us with the presumption that the laws of a sister State are the same as those of the forum, and where there is no evidence to the contrary, we must hold that the provisions of 42-1-52a relative to exemption and reciprocity are the same as ours, and so plaintiffs were exempted, and the provision of our law providing for exclusive remedy bars the Commission from any action in this cause.

Having come to a decision for the reasons heretofore set forth, we believe there is no need for further discussion because of additional grounds set forth by plaintiffs.

The order of the Industrial Commission is annulled and vacated.

LARSON, McDONOUGH, and WADE, JJ., concur.

WOLFE, Chief Justice (concurring specially).

I concur. However, I think it should be made clear that this case did not involve an attempt by the Utah Industrial Commission to apply the Utah Act with extraterritorial effect. The accident giving rise to the injury and death had its situs in Utah. The application of Utah statutes to an industrial accident with its situs within the territorial limits of Utah does not involve a question of extraterritoriality. Aside from the operation of certain conflicts of law principles the Utah Industrial Commission clearly could apply Utah law and such application would have no extraterritorial effect. Were the employer, United Air Lines, not exempted from the provisions of the Utah Act, some very interesting conflicts of law questions would be raised by the fact that California took jurisdiction and applied its compensation laws to this industrial accident

which happened without the territorial limits of California. But 42-1-52a expressly exempts United Air Lines from the operation of the provisions of the Utah Act. This section is set out in the opinion of Mr. Justice TURNER. It exempts employers from the provisions of the Act when the injured employee was hired outside the state and only temporarily within the state doing work for his employer if such employer has furnished workmen's compensation insurance coverage under the laws of another state so as to cover the employment in Utah. This exemption is to take effect however, only if the extraterritorial provisions of the Utah Act are recognized in such other state and only if employers and employees, who are covered under compensation laws of this state, are likewise exempted from the application of the workmen's compensation act of such other state.

In the instant case there is no evidence regarding the provisions of the California law in this respect. In view of this I agree with the holding of Mr. Justice TURNER that we will assume that California law is the same as the Utah law. The injured employee, Miss Cantwell, was hired outside of this state. She was killed in the course of her employment while temporarily within this state. The employer, United Air Lines, had furnished workmen's compensation insurance coverage under the law of the State of California so as to cover temporary employment in Utah. It necessarily follows that the employer was expressly exempted from the provisions of the Utah Act. This holding obviates the necessity for any discussion of the conflicts of law questions discussed by counsel and the various questions involving attempts to apply the Utah law with extraterritorial effect.

The case of *Fay* v. *Industrial Commission*, 100 Utah 542, 114 P. 2d 508, cited by counsel, involved a situation where the employee-employer relationship was localized in Utah, but the employee was killed in an accident which happened in Idaho. The application of Utah law in situations like the Fay case have often been referred to as the application

of the law with extraterritorial effect. Technically this would not seem to be correct. The Utah Commission was directed to take jurisdiction on the grounds that the relationship of employer-employee existed in Utah. It would be the existence of that relationship here that would give the Utah Commission jurisdiction. Had Idaho also taken jurisdiction under its compensation laws and proceeded to award compensation, the holding of *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430, 64 S. Ct. 208, 88 L. Ed.—, 150 A. L. R. 413, might be drawn into play. The questions thus raised would be conflicts of law questions. Neither Utah nor Idaho would be held to be applying its laws with extraterritorial effect. Utah would take jurisdiction by virtue of the fact that the relationship of employee-employer existed in Utah. It would apply Utah law. Idaho would take jurisdiction and apply its law on the grounds that the accident happened in Idaho. Neither would be attempting to have its laws enforced outside its territorial limits. These concepts and various questions relating thereto have been raised by counsel, but the holding that the Utah statute expressly exempts United Air Lines from the provisions of the Utah Act makes further discussion of these points unnecessary.