Gaylen CHRISTENSEN and Mary Christensen, husband and wife, Plaintiffs,

and

Workers Compensation Fund of Utah, Plaintiffs–Appellant,

v.

OSHKOSH TRUCK CORPORATION, a Wisconsin Corporation, Defendant–Appellee.

No. 92–4182.

United States Court of Appeals, Tenth Circuit.

Dec. 21, 1993.

Timothy C. Houpt (Daniel A. Kaplan, with him on the briefs) of Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT, for appellant.

LeGrand R. Curtis, Jr. (William Kelly Nash with him on the brief) of Holme, Roberts & Owen, Salt Lake City, UT, for appellee.

Before BALDOCK, BARRETT and EBEL, Circuit Judges.

BARRETT, Senior Circuit Judge.

Gaylen Christensen (Christensen) and Workers Compensation Fund of Utah (Fund) appeal from the district court's grant of summary judgment in favor of Oshkosh Truck Corporation, a Wisconsin corporation (Oshkosh), in this suit based on diversity of citizenship.

*Facts*

In May, 1990, Harris Truck & Equipment Company (Harris Truck), of Tremont, Utah, directed its employee, Christensen, to Oshkosh, Wisconsin, to take delivery of a new cement truck, manufactured by Oshkosh. On May 10, 1990, Christensen was injured while driving the cement truck when it rolled over in a single vehicle accident near Stockton, Iowa. Christensen, then age 64, was not wearing a seat belt. He was thrown into the vehicle's left door and window. He sustained head injuries, including hematoma to post scalp, contusions, and persistent · headaches and dizziness. He was treated as an outpatient at Mercy ·Hospital in Davenport, Iowa, for contusions of the head and right calf and released after a few hours.

Christensen believed that the accident occurred because of a malfunction of certain wheels on the cement truck, resulting·from a defect in the design or manufacture of the vehicle by Oshkosh. Oshkosh has never acknowledged any fault or liability arising from the accident.

Following his return to Utah on May 14, 1990, Christensen contacted his family physician, Dr. Rodney W. Merrill, who examined him and described the injuries sustained by Christensen and his symptoms as multiple contusions to the head and persistent and severe headaches and dizziness. These symptoms· continued. On July 17, 1990, Christensen was tape recorded· as stating

that he had suffered two cuts in his head and that his head had been "banged up" and that he had continuing headaches and dizzy spells. A CT scan of Christensen's head was performed and was normal. Christensen was treated with pain medication for persistent headaches. On June 27, 1990, Christensen underwent open heart surgery for a triple bypass, unrelated to the accident. The recovery was complicated by a sternal infection which resulted in the removal of his sternum.

Inasmuch as the accident of May 10, 1990, had occurred in the course of Christensen's employment, his employer, Harris Truck, had contacted the Fund, its compensation carrier, and benefits both for temporary total disability and for medical expenses related to the accident were paid to or on behalf of Christensen. As of May, 1992, the Fund had paid disability benefits in excess of $25,000.00 and medical expenses in excess of $30,000.00.

Very soon after the accident, Christensen was contacted by Mr. Rodman C. Gabel (Gabel), Regional Sales Manager for Oshkosh, who inquired of his condition. During the next several months, Gabel regularly visited Christensen. On August 10, 1990, Christensen phoned Gabel and offered to settle any claims he had against Oshkosh with respect to the injuries he had sustained in the accident for $45,700.00. Gabel rejected that offer and countered with a written settlement offer of $19,000.00 which was copied to Harris Truck. Christensen and Gabel negotiated further and agreed to a final settlement of $25,000.00.

On August 21, 1990, Gabel furnished Christensen with a release document and they met at the Harris Truck offices where Christensen, in the presence of Gabel and Mr. Eldon R. Johnson, Harris Truck's Office Manager, witnessed Christensen's execution of the Release. A check for $25,000.00 was then sent to Christensen. The Release discharged Oshkosh from any and all claims arising from the May 10, 1990, accident and "any and all known and unknown, foreseen and unforeseen bodily and personal injuries" in compromise of "a doubtful and disputed claim" wherein Christensen acknowledged that "the injuries sustained are or may be

permanent and progressive and that recovery therefrom is uncertain and indefinite."

It is uncontroverted that: the Fund was not consulted or in anywise given prior notice of the settlement and Release; Oshkosh knew that Christensen's injuries of May 10, 1990, had occurred in the course of his employment with Harris Truck; Oshkosh knew that Christensen had received workers' compensation benefits from the Fund prior to the settlement and Release; Harris Truck received a copy of Gabel's settlement offer of $19,000.00; and the Release was executed in the Harris Truck office, witnessed and notarized by Harris Truck's Office Manager, Johnson.

Following the settlement and Release, Christensen was examined by Dr. Milton Thomas, a neurologist, following continued complaints of headaches. Dr. Thomas, after workup evaluations, diagnosed Christensen as suffering from "post-concussion syndrome" in addition to post-traumatic dizziness and headaches, which would account for Christensen's difficulty in memory loss. Thereafter, Christensen undertook extensive rehabilitation for his intellectual and neurological problems in California for about a year and one-half. Dr. William F. Brant concluded that Christensen had suffered impairment of his complex integrated cerebral functions at 10% and impairment for disequilibrium or dizziness of 15%. As a result, Christensen fell frequently and was unable to safely drive. These losses were attributed to the May 10, 1990, accident. It is undisputed that Christensen did not know that he suffered from post-concussion syndrome or that he was aware of the full nature and extent of these conditions when he executed the Release.

### This Litigation

On May 9, 1992, Christensen, his wife, Mary (who later dismissed her claim), and the Fund filed suit in the United States District Court for the District of Utah against Oshkosh pursuant to diversity jurisdiction, 28 U.S.C. § 1332, alleging that the May 10, 1990, accident occurred because the truck or its components were defective and were the proximate cause of Christensen's

injuries, resulting in severe head and brain injury, and total and permanent disability. The complaint asserted products liability, negligent breach of duties of due care, negligent failure to adequately warn and instruct and breach of warranties that the truck and components were merchantable and fit for purpose to which they were intended. The complaint further alleged that the defect in the truck was known to Oshkosh and that it knowingly and recklessly permitted Christensen to take custody of the truck knowing that the defect would cause him to lose control. On that predicate, punitive damages were sought. The complaint finally sought a recission of the Release as void and unenforceable, as procured by Oshkosh through fraud and misrepresentation and by duress and mistake of fact in that Christensen's injuries and damages greatly exceeded those known to the parties at the time the Release was executed.

Oshkosh responded with a Motion to Dismiss, alleging that the claims asserted by the plaintiffs' complaint were barred by virtue of the Release. Oshkosh attached an affidavit of Mr. Gabel and the executed Release.

Thereafter, plaintiffs filed their Memorandum in Opposition to the Motion to Dismiss with attached affidavit of Christensen, an impairment rating report of Dr. Brandt dated April 27, 1992, and a medical evaluation submitted by Dr. Thomas dated September 19, 1990, together with other exhibits.

The district court heard arguments on the motion to dismiss which was treated as a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b) inasmuch as matters outside the pleadings were considered, and granted Summary Judgment to Oshkosh on September 23, 1992. Judgment in favor of Oshkosh was entered September 28, 1992. The transcript of proceedings shows that counsel for the Fund urged the court to deny the motion because, *inter alia,* the issue as to whether the Release is void because both parties proceeded under a mutual mistake as to the extent of Christensen's injuries could only be determined at trial where the Fund would establish that Christensen had suffered brain damage or impaired cerebral functions as a result of the accident. Fur-

ther, the Fund argued that Christensen was not able to fully understand the nature and effect of the Release. (Appendix of Plaintiff–Appellant, XVIII, pp. 16–20). The court observed:

> Counsel, it seems to me you are misrepresenting it. It is a little difficult for me to see how Oshkosh was such a wrong doer when the scenario was initiated by Mr. Christensen, who was a very capable businessman. I want to thoroughly evaluate these facts. But it seems to me your view is a little bit—not accurately stated.

*Id.* at 20–21.

As to the fraud allegation, the court observed that in order to establish a fraud claim, one party must possess information with which it willfully misleads another, and that no facts indicate fraud in the record. *Id.* at 22.

Finally, the Fund argued that Utah statutory law required that the Fund be put on notice of the settlement negotiations so as to "... permit the carrier to participate, to protect its interest, to obtain counsel, to intercede in the action, if necessary and certainly to protect its interest with respect to the statutory repayment provisions." *Id.* at 24. The district court, making reference to *Taylor v. Industrial Comm'n of Utah,* 743 P.2d 1183 (Utah 1987), stated that "It seems to me that Taylor says where an employee settles with someone other than his employer and releases the parties that there is no requirement to obtain approval from the Workers Compensation." *Id.* at 26.

The district court concluded:

> Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court is of the opinion and finds that the release executed by Mr. Christensen is valid and a proper defense to claims asserted by him. The court is also of the opinion that the release executed by Mr. Christensen is valid against claims asserted by the Workers Compensation Fund. The case law and the view of the Court is clear that there is no statutory requirement that the employee who settles with someone other than his employer and releases that party from liability obtain approval from Work-

ers Compensation Fund. Taylor versus Industrial Commission of Utah, 743 Pacific 2nd, 1183, Utah, 1987.

The court is of the view that once Mr. Christensen released his claims there was no longer any claim over which Workers Compensation Fund could be trustee because Workers Compensation Fund's claim is dirivitive [sic] of Mr. Christensen's claim. Workers Compensation Fund's claim is also barred by the release.

*Id.* at 31–32.

### Contentions on Appeal

On appeal, the Fund contends that the district court erred in (1) determining that a worker's compensation carrier's statutory right of recovery against a third-party tortfeasor may be compromised and settled by the injured worker and the third-party tortfeasor in the absence of notice to the worker's compensation carrier, (2) determining that a third party against whom a claim for damages is asserted, who is on notice that the claim arises out of an industrial injury and that workers' compensation benefits have been paid and who has failed to notify the workers' compensation carrier of a proposed settlement and failed to assure satisfaction of the carrier's statutory interest, may rely upon a release executed solely by the injured worker as a defense to any further liability, and (3) determining that no genuine issues of material fact appear in the record relating to voidability of the release as against the Workers Compensation Fund of Utah that make the entry of summary judgment improper.

### Discussion–Disposition

#### I.

■■■ The Fund contends that the district court erred in determining that a workers' compensation carrier's statutory right of recovery against a third-party tortfeasor may be compromised and settled by the insured injured worker and the third-party tortfeasor in the absence of notice to the workers' compensation carrier.

Our standard of review of this contention was well stated in *Utah Power & Light Co. v.*

*Federal Ins. Co.,* 983 F.2d 1549, 1553 (10th Cir.1993):

On appeal, we review the grant of summary judgment de novo, using the same standards applied by the district court. *Osgood v. State Farm Mut. Auto Ins. Co.,* 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); see *Anderson v. Liberty Lobby, Ins.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

Utah Code Annotated Section 35–1–62 (1988) provides, in pertinent part:

When any injury or death for which compensation is payable under this title shall have been caused by the wrongful act or neglect of a person other than an employer, officer, agent, or employee of said employer, the injured employee, or in case of death his dependents, may claim compensation and the injured employee or his heirs or personal representative may also have an action for damages against such third person. If compensation is claimed and the employer or insurance carrier becomes obligated to pay compensation, the employer or insurance carrier shall become trustee of the cause of action against the third party and may bring and maintain the action either in its own name or in the name of the injured employee, or his heirs or the personal representative of the deceased, provided the employer or carrier may not settle and release the cause of action without the consent of the commission. Before proceeding against the third party, the injured employee, or, in case of death, his heirs, shall give written notice of such intention to the carrier or other person obligated for the compensation payments, in order to give such person a reasonable opportunity to enter an appearance in the proceeding.

The statute further provides that if any recovery is obtained against a third party, the Fund is entitled to reimbursement not

only for what the Fund has paid to the injured employee at the time of trial or settlement, but also for any additional sum it should be legally obligated to pay. *Industrial Comm'n v. Wasatch Grading Co.,* 80 Utah 223, 14 P.2d 988 (1932). The purpose of the right of reimbursement provided for in this section is to prevent double recovery by the injured employee or his or her dependents. *Allstate Ins. Co. v. Bliss,* 725 P.2d 1330 (Utah 1986).

It is undisputed that in this case Christensen gave notice to his employer, Harris Truck, that he was seeking a settlement with Oshkosh on his third-party claim. The Fund contends, however, that "In this case, Christensen's employer had no such interest. [In protecting from the obligation for past and future compensation payment.] Accordingly, notice to the employer did not satisfy the statute or affect the Funds interests." (Appellant's Reply Brief, p. 1). To be sure, the copy of the letter sent to Harris Truck which Gabel wrote to Christensen rejecting the $45,700.00 settlement offer and countering with a $19,000.00 offer was not notice to the Fund. Furthermore, the fact that the settlement was effected at Harris Truck offices where Christensen formally executed the Release did not constitute notice to the Fund. We deem it most significant, however, that the Utah Supreme Court, in *Taylor,* 743 P.2d at 1185, held that Section 35–1–62 "... allows an employee to sue the third party, provided that the employee gives written notice of his intent to sue to his employer *or* its insurance carrier." (Emphasis added).

In *Taylor,* the claimant was injured while at work through the negligence of a third party. Claimant Taylor received workers compensation. He sued the third party, and following a settlement agreement, he executed a release. The document released the third party from all present and future liability. Thereafter, Taylor discovered that he had additional accident-related injuries for which he sought workers compensation from his employer. When his employer refused to pay additional benefits, Taylor filed a claim with the Utah Industrial Commission seeking further workers compensation benefits. He contended that Section 35–1–62 did not re-

quire that future medical expenses to be paid by the Fund be deducted from the amount he received in the third-party settlement. Taylor also argued that his third-party settlement was invalid because it was not approved in advance by the Commission as required by Section 35–1–62. The court held that Section 35–1–62 allows an employee to sue (or settle with) a third party, provided that the employee first gives written notice of his intent to sue (or settle) with his employer or its insurance carrier. The court reasoned that the statute does not require an employee who settles a third-party suit to obtain commission approval:

... The lack of a requirement that the Commission approve employee-initiated settlements is consistent with sound policy. The Commission is required to approve employer initiated settlements in order to protect the interest of the employee and prevent the employer from entering into a settlement that places the employer's welfare above that of the employee.

743 P.2d at 1185.

The *Taylor* court further stated:

... By settling with the third party, claimant in no way renounced or surrendered his right to collect compensation; rather, he agreed to accept a settlement from the third party. He had already accepted workers' compensation from the employer and retained the right to file claims in the future, although by operation of statute the amounts paid would be deducted from the settlement until the settlement was exhausted. *See* Utah Code Ann. § 35–1–62(3) (Supp.1987).

*Id.*

The *Taylor* court upheld the Commission's interpretation of Section 35–1–62(3) as requiring that the balance of settlement funds after deduction of attorney fees and reimbursement to the employer for past payments made must be applied to medical expenses and lost income.

In *Graham v. Industrial Commission,* 26 Utah 2d 424, 491 P.2d 223 (1971), *modified on other grounds,* 27 Utah 2d 279, 495 P.2d 806 (1972), the claimant, Graham, was the widow of a Utah employee who lost his life in

a head-on automobile collision in California. Graham, on her behalf and on behalf of her six minor children, retained counsel and settled her case against the driver of the other vehicle involved in the fatal head-on collision for $95,000.00. Thereafter, Graham, on her behalf and on behalf of her six minor children, filed a claim for award under the Utah Workers Compensation Act against the employer's carrier, The Travelers Insurance Company. The Utah Industrial Commission refused to make an award on the ground that Graham had already received from the third-party tortfeasor a sum in excess of $90,000.00 to which she would be entitled under Utah law. The court held that the fact that Graham had effected her third-party tortfeasor settlement prior to filing her claim for workers compensation benefits did not preclude her right to receive a proportional share ($20,000 to $95,000) of her attorney fees and costs which she incurred in the settlement. The dissent pointed out that had Graham filed her workers compensation claim first, she would have been required to fully reimburse the carrier and the carrier would not have been obligated to pay any portion of her attorney fees and costs.

The Graham court stated:

Had the Commission first made an award to plaintiff, the Travelers Insurance Company would have paid the same, and then either it or the heirs or personal representatives of the deceased would have sued the third-party tortfeasor for the wrongful death of plaintiff's husband. Any money recovered from the third party tortfeasor would be disbursed according to ... statutory provisions:

(1) The reasonable expense of the action, including attorneys' fees, shall be paid and charged proportionately against the parties as their interests may appear.

(2) The person liable for compensation payments shall be reimbursed in full for all payments made.

(3) The balance shall be paid to the injured employee or his heirs in case of death, to be applied to reduce or satisfy in full any obligation thereafter accruing against the person liable for compensation. *Id.* 491 P.2d at 223–24.

Thus, based on the Utah statute, as interpreted in *Taylor* and *Graham*, we hold that Christensen did give notice to his employer, Harris Truck, relative to his intention to settle his third-party claim against Oshkosh and that such notice was in satisfaction of the requirements of Section 35–1–62. The Utah Supreme Court has made it clear in *Taylor* that Section 35–1–62 is satisfied if the injured employee gives written notice to either his employer or to the employer's workers compensation carrier of his intent to settle his third-party tortfeasor claim. This was satisfied when Christensen appeared in the Harris Truck offices where Christensen executed the Release document in the presence of Mr. Eldon R. Johnson, Harris Truck's Office Manager, who witnessed and notarized Christensen's execution of the document. *Taylor* informs us that while it is necessary that the Commission approve employer-initiated settlements with third-party tort feasors in order to protect the interest of the injured employee, that concern is not present when the employee, as here, initiates the settlement process. In any event, the Fund is entitled to reimbursement under Section 35–1–62 in order to prevent double recovery by the injured employee or his or her dependents. *Allstate.*

II.

■ The Fund argues that the district court erred in determining that a third party against whom a claim is asserted, who is on notice that the claim arises out of an industrial injury and that workers compensation benefits have been paid and who has failed to notify the workers' compensation carrier of a proposed settlement and failed to assure satisfaction of the carrier's statutory interest, may rely upon a release executed solely by the injured worker as a defense to any further liability.

The plain language of Section 35–1–62 does not prohibit an employee from initiating a third-party settlement, nor does it require the employee to obtain settlement approval from the Commission, his employer, an insur-

ance carrier (here the Fund) or anyone else. The only limitation imposed by this section upon an employee who desires to negotiate a settlement with a third party is that the employee "shall give written notice of such intention to the carrier *or other person obligated* for the compensation payments." The Utah legislature identified the "other person" in Utah Code Ann. § 35–1–45 where it reads that "[T]he responsibility for compensation ... provided under [the Workers' Compensation act] shall be upon the employer and its insurance carrier."

The Utah statutes do not impose any duty or obligation upon an alleged third-party tortfeasor involved in an employee initiated settlement to give any notice to the Commission or the Fund. Even so, the undisputed evidence here shows that Oshkosh did submit a copy of its settlement offer of $19,000 to Harris Truck and that Mr. Gabel, its Regional Sales Manager, met with Christensen in the Harris Truck office with Mr. Johnson where Christensen executed the Release document.

We have heretofore observed that *Taylor* holds that an injured employee may settle a third-party tortfeasor claim without the approval of the Commission or the Fund, provided that the employee first gives written notice of his intent to sue or to settle to his employer or its insurance carrier. In this case, Christensen gave written notice to his employer, Harris Truck. *Graham* is further authority for the rule that a widow of an employee killed in the course of his employment may negotiate a third-party tortfeasor settlement with notice to or consultation with her husband's employer, the workers compensation insurance carrier or the Utah Industrial Commission.

Utah's Workers' Compensation Act is a comprehensive statutory scheme enacted to provide a new method and means of providing greater protection and security to the worker and his dependents against injury and death occurring in the course of employment. *United Air Lines Transp. Corp. v. Industrial Comm'n,* 107 Utah 52, 151 P.2d 591 (1944); *Wilstead v. Industrial Comm'n,* 17 Utah 2d 214, 407 P.2d 692 (1965). The employer has been held to be primarily liable

for compensation to the employee. *American Fuel Co. v. Industrial Comm'n,* 187 P. 633 (Utah 1920). In *Kerans v. Industrial Comm'n,* 713 P.2d 49 (Utah 1986), the court held that because the workers' compensation statutes provide the exclusive remedy for work-related injuries, it does not lie within the prerogative of the court to fashion any common-law exception to the statutes.

The Fund contends that if this court is not persuaded that Section 35–1–62 protects the Fund's recovery rights against Oshkosh, equitable subrogation principles require the same result. The Fund cites to *State Farm Mut. Auto Ins. Co. v. Sanditen,* 701 P.2d 876, 877 (Colo.Ct.App.1985) and other cases for the doctrine of equity that a tortfeasor with notice of a subrogation interest may not extinguish that interest by settling with the plaintiff in the absence of notice to the subrogee. Fund, while recognizing that the Utah Workers' Compensation Act supplants wholly the common law rights of an injured workman to recover damages for a work-related injury, *see* Brief of Appellant, p. 13, nonetheless urges us to recognize an equitable subrogation right requiring its approval of any employee initiated settlement with a third-party tortfeasor. This we shall not do.

The Utah Workers' Compensation Act does not require the written consent of an employer or insurance carrier before an employee settles a claim against a third-party tortfeasor. The Fund should address its concern in this regard to the Utah legislature, not to this court. Under the present Utah statutory scheme, an employee who settles a third-party claim without the consent of the employer, forfeits his right to future compensation until and unless the settlement proceeds are applied for full reimbursement of all Workers Compensation Fund payments previously made. This is the procedure set forth pursuant to Section 35–1–62. Neither the Act or Utah case law recognizes a right in the Commission, the employer or the insurance carrier to proceed with an action against a third-party tortfeasor after an employee initiated settlement is finalized.

We hold, as a matter of law, that under the facts of this case, no equitable subrogation

principles apply to permit the Fund to proceed against Oshkosh.

## III.

■ Fund argues that if an insured can extinguish a compensation carrier's subrogation interest by a third-party settlement, a question of fact exists in this case precluding summary judgment in favor of Oshkosh as to whether the settlement was valid and enforceable inasmuch as the parties may have been under a mutual mistake as to the nature and seriousness of Christensen's injuries at the time of settlement.

Fund argues that the record shows that prior to his referral to a neurologist following his heart surgery and settlement with Oshkosh, Christensen was diagnosed with a permanent disability of post-concussion syndrome. Christensen executed an affidavit in the record wherein he stated that at the time he executed the release, he was not aware of the post-concussion syndrome diagnosis or the severity of his head injury. This affidavit, together with the medical reports of record, demonstrate, contends the Fund, "... at the very least ... an issue of material fact" requiring that Christensen and the Fund should have been given an opportunity to fully develop and present evidence in support of their claim of a mutual mistake of fact. (Brief of Appellant, p. 29).

Oshkosh counters that the release is binding and enforceable inasmuch as the record shows that the parties to the settlement were not under any mistake of fact relative to Christensen's injuries when the settlement was accomplished. Prior to the settlement, both parties were aware that Christensen's head had been "banged up" in the accident and that Christensen had suffered persistent and continuing headaches and dizziness. In the release document executed by Christensen he acknowledged that "the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite." The release discharged Oshkosh from "any and all known and unknown, foreseen and unforeseen bodily and personal injuries."

In *Reynolds v. Merrill*, 23 Utah 2d 155, 460 P.2d 323 (1969), plaintiff was injured in a two car collision, and for two and one-half months his physician treated him for a recurrence of bursitis, and executed an "Attending Physician's Report" which was made available to the defendant's insurance adjuster stating that x-rays had been taken, the plaintiff was not disabled, and that plaintiff was diagnosed with the recurrent conditions of traumatic bursitis of the right shoulder and traumatic myositis posterior neck muscles. Soon thereafter, the insurance adjuster paid plaintiff $655.56 and took a release wherein plaintiff acknowledged that his injuries may be permanent and progressive and that recovery therefrom is uncertain and indefinite.

Within a period of some three months thereafter, plaintiff's shoulder pains grew more severe. An orthopedic surgeon diagnosed plaintiff's injury as, a herniated disc. A spinal fusion was performed on plaintiff, resulting in a permanent partial disability.

The state district court held that plaintiff had lost all rights against the defendant by virtue of the release, and entered summary judgment in favor of the defendant. The Supreme Court reversed and in doing so, observed that the district court:

... failed to distinguish between an *unknown injury* and *unknown* consequences of a *known injury*. The former can be the basis of a mutual mistake of fact, while the latter would be only a mistake of opinion. While an injury may be known, its consequences are not matters of existing facts which can be agreed upon or even foreseen exactly. Such consequences will be revealed only in the future and at the present time are merely matters of opinion.

*Id.* 460 P.2d at 324.

The Court pointed out that while the release contained all inclusive language discharging all claims and causes of action, nevertheless it will be set aside "... when it can be shown that at the time of its execution both parties were laboring under a mutual mistake as to the extent of the injuries suffered by the releasor." *Id.* at 325. The court observed that plaintiff had alleged that his herniated disc resulted from the accident and that if plaintiff can prove that and fur-

ther that at the time he executed the release neither party knew about it, he should have the privilege of presenting evidence on the issue at trial.

The *Reynolds* holding was also applied in *Campbell v. Stagg*, 596 P.2d 1037 (Utah 1979) (when parties entered into settlement and release they relied on physician's statement that plaintiff's injuries were minor, whereas the injuries were later found to be damage to spinal discs and nerve groups in the spine and shoulder), and *Carter v. Kingsford*, 557 P.2d 1005 (Utah 1976) (at time of release plaintiff's injuries were diagnosed as cervical strain, strain of left shoulder and superficial abrasions, later found to be serious requiring surgical repair).

In *Blackhurst v. Transamerica Ins. Co.*, 699 P.2d 688 (Utah 1985), the court distinguished an unknown consequence of a known injury from an unknown injury, holding that an unknown consequence of a known injury does not provide relief to a party to a release inasmuch as the party undertakes the risk that the resolution of uncertainty might be unfavorable.

Mrs. Blackhurst, then age 82, was struck by a car. She suffered brain injury and was rendered incompetent. Her son began negotiations with a Transamerica agent regarding his mother's injury claim. Transamerica knew of her brain injury. The parties arrived at a settlement figure but did not formally conclude the agreement prior to Mrs. Blackhurst's death. The cause of Mrs. Blackhurst's death was listed as "severe brain damage due to a remote injury seven months, possible pneumonia." Transamerica contended that it was entitled to rescind the settlement agreement because of a mutual mistake of fact, since neither Mrs. Blackhurst's son nor Transamerica knew that Mrs. Blackhurst had pneumonia, which Transamerica contended to be the cause of her death. The trial court rejected this contention and the Supreme Court agreed:

> ... The parties were not mistaken as to Mrs. Blackhurst's brain injury resulting from the accident. There was, of course, at the time of settlement negotiations, as in every personal injury case, a conscious uncertainty regarding the medical outcome

of the victim's case. At the time of settlement, both parties undertook a risk that the resolution of the uncertainty might be unfavorable. *See* Restatement (Second) of Contracts, § 154(b) (1981). This court will not nullify a settlement contract because one of the parties would have acted differently if all the future outcomes had been known at the time of the agreement. (Footnote omitted)

699 P.2d at 692.

In the instant case, it is clear that at all times both Christensen and Oshkosh were aware that Christensen suffered head injuries as a result of the accident and that he was suffering from persistent and continuing headaches and dizziness. Under these circumstances, Christensen assumed the risk of all consequences arising from the known injury to his head, including any unforeseen consequences of that injury. The distinction between our case and that of *Reynolds*, *Campbell* and *Carter* is that in those cases the nature of the injury was unknown. Here, the nature of the injury was known to be head injury but the consequences thereof were unknown.

**AFFIRMED.**