## ST. PAUL FIRE AND MARINE INSURANCE COMPANY *v.* TREADWELL

[No. 67, September Term, 1971.]

*Decided November 12, 1971.*

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Hugh E. Donovan,* with whom were *Donahue & Ehrmantraut* on the brief, for appellant.

*John F. McAuliffe,* with whom were *Heeney, McAuliffe & McAuliffe* on the brief, for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

On 4 January 1971 the appellant (Company), seeking to recover $5,081.49, sued the appellee (Treadwell) in the Circuit Court for Montgomery County. In its declaration the Company alleged it was the insurer of Treadwell's employer, that the Workmen's Compensation Commission found she had sustained an injury arising out of the course of her employment, that it ordered the pay-

ment of compensation, that upon appeal the court reversed the action of the Commission, that on 11 July 1969 when the Commission rescinded its earlier order the Company had paid Treadwell the $5,081.49 it seeks to recover. On 19 March 1971, the trial judge, Pugh, J. (now C.J.), sustained Treadwell's demurrer without leave to amend and from his order making it so the Company has appealed.

It seems we have never considered the precise question put to us by the Company's first contention. It says, correctly we think, that while the statute, Code (1964 Repl. Vol.), Art. 101, does not contain explicit language authorizing the recovery by an employer (or its insurer) of payments found on appeal to have been awarded erroneously, neither does it, in so many words, forbid the recovery of such payments. Had the Legislature intended to proscribe the recovery of such payments it would not have given the employer the right of appeal which, the Company insists, is a hollow right if, after success on appeal, payments erroneously ordered cannot be recovered. The Company contends, secondly, that it should succeed here because Treadwell has been unjustly enriched.

The pertinent language of the statute will be found in § 56 (a) which, in part, is as follows:

"Any employer, employee, beneficiary or person feeling aggrieved by any decision of the Commission * * * may have the same reviewed by a proceeding in the nature of an appeal * * * in the circuit court * * *. If the court shall determine that the Commission has acted within its powers and has correctly construed the law and the facts, the decision of the Commission shall be confirmed; otherwise it shall be reversed or modified. * * * *An appeal shall not be a stay of an order of the Commission directing payment of compensation or * * * the furnishing of medical treatment. * * * All appeals from*

> *the Commission shall have precedence over all cases except criminal cases."* (Emphasis added.)

It should be observed at the outset that in other jurisdictions the weight of authority, such as it is, seems to support the notion that these payments cannot be recovered by the employer. *Daoud v. Matz*, 73 So. 2d 51 (Fla. 1954) ; *Sassarro v. Wright Aeronautical Corp.*, 24 N.J. Misc. 57, 46 A. 2d 52 (1946) ; *Rubino v. City of New York*, 32 App. Div. 2d 44, 299 N.Y.S.2d 639 (1969) ; *Manning v. Gossett Mills*, 192 S. C. 262, 6 S.E.2d 256 (1939) ; *Brakus v. Dept. of Labor and Industries*, 48 Wash. 2d 218, 292 P. 2d 865 (1956). Over four decades ago our predecessors proclaimed the validity of the "no stay" clause in § 56 (a). Judge Urner, writing for the Court in *Branch v. Indemnity Insurance Company of North America*, 156 Md. 482, 489 (1929), said:

> "The right of the Legislature to provide that an appeal from a decision of the State Industrial Accident Commission [now the Workmen's Compensation Commission] shall not be a stay could not be denied consistently with the principle upon which the general validity of the act has been adjudicated. Its design was to ensure speedy, as well as certain, relief in proper cases within the scope of its application. That humanitarian policy would be seriously hampered if the weekly payments of compensation awarded by the commission could be suspended because of an appeal. In providing that an appeal should not be a stay the statute was simply adopting a necessary expedient to accomplish one of the important purposes for which it was enacted."

In *Hoffman v. Liberty Mutual Ins. Co.*, 232 Md. 51, 56 (1963), the question now before us was approached only tangentially. There the insurer sought to defeat the statutory lien of an attorney for his fee by applying funds escrowed by order of the Commission to the satisfaction

of an overpayment made to the claimant. The overpayment, of course, was the consequence of the insurer's partial success on appeal. We held that the lien for the fee, as finally determined, could not be defeated. In the course of his opinion Judge Marbury said, for the Court:

"The appellee cannot set aside in escrow the original fee, prosecute an appeal resulting in a lower award, and then take the position that the attorney's lien does not apply. This would defeat the purpose of the law and the rule adopted pursuant thereto. The fact that appellee was compelled to make payments during the pendency of the appeal was not the result of appellant's action, but of the law, for this has been established since *Branch v. Indemnity Ins. Co.* (1929), 156 Md. 482, 144 Atl. 696. But for the appellant's lien the appellee would have been compelled to pay out the full amount of the first award before the appeal was determined. Appellee is estopped from claiming there is no fund from which the lien can be satisfied. The lien of the fee attached at the time of the Commission's original order, and, as stated above, the only effect of the new modified award and order was to change the amount of the fee. *Contrary to appellee's contention no money was owed by the claimant to appellee, since an overpayment does not permit a recovery by the insurer in this situation.*" (Emphasis added.)

We have come no closer to the question here presented than the dictum (italicized) in Judge Marbury's opinion.

Virtually indistinguishable from the case at bar is *Tompkins v. Rinner Construction Co.,* 196 Kan. 244, 409 P. 2d 1001 (1966). The question, as stated by the Kansas Supreme Court, follows:

"Where, in an appeal to this court by an em-

ployer and its insurance carrier from a judgment affirming an award of compensation by the director, it is ultimately determined that the accidental injury did *not* arise 'out of' the employment and therefore compensation is to be denied, *is the insurance carrier entitled to 'recover back' the payments made by it pending disposition of the appeals?"* 196 Kan. at 244-45.

The position of the appellee (Rinner), as stated by the court, was:

"In support of the district court's judgment ordering restitution respondent contends that by this court's decision it was conclusively determined that the claimant had no right at any time to compensation on account of the death of her husband and therefore has no right to retain any payments which had been made to her; that the provisions of the workmen's compensation law requiring payment of compensation pending appeals are for the protection of claimants who are justly entitled thereto and are not intended to result in unjust enrichment of claimant who had no valid claim or right to compensation *ab initio;* that considerations of every day common justice dictate that 'recovery back' must be allowed, and that it is inconceivable to say that one should be permitted to retain money to which he had no right in the first place." *Id.* at 246.

The court then proceeded to state the position of the appellant (Tompkins):

"Claimant, on the other hand, contends that the workmen's compensation act establishes and provides a procedure of its own covering every phase of the right to compensation and that such procedure is complete and exclusive; that

a compensation award is unlike a 'judgment' in that it is flexible and subject to review and modification under certain circumstances; that under the circumstances of this case respondent could reap the benefit of paying a lesser sum in the event of claimant's remarriage [K.S.A. 44-510 (2) (d)]; that KSA 44-556 provides that payments are to be made pending appeal to the district court and to this court and if the legislature had intended that they could be recovered back in event of reversal by this court it would have so provided; that it is not the intention and spirit of the act to allow a respondent to recover back money paid under an award which already has been spent by a claimant for living expenses, otherwise there would have been no purpose in requiring payments to be made pending an appeal—and therefore common law rules relating to the general doctrine of restitution have no application." *Id.* at 247.

The court noticed the failure of either party to cite any "authority bearing on the question." Mention was made, also, of the frank admission of Rinner's counsel that "he knew of no instance where, under similar facts and circumstances — 'recovery back' had been sought." In conclusion the court said:

"From a purely 'legalistic' standpoint it can, of course, logically be argued that under that decision claimant was entitled to no compensation in the first place — and therefore it is somewhat 'shocking' to say that she should now be permitted to retain the payments made to her. We believe, however, the matter does not end there, and that in view of the provisions of the compensation act general rules relating to 'restitution' have no application and that 'recovery back' is not to be permitted. Nowhere in the act is there any provision authorizing a

'recovery back.' If the anomalous situation presented here is to be corrected it is within the power of the legislature to do so.

"The judgment of the district court directing that claimant make restitution to respondent is therefore reversed." *Id.* at 249.

The Kansas statute is substantially the same as the Maryland statute. It does provide, however, that "compensation payable under the decision of the district court shall not be stayed pending such appeal to the supreme court." Although our statute, Code (1964 Repl. Vol.), Art. 101, § 56 (a) provides that "[a]n appeal shall not be a stay of an order * * * directing payment * * *" we think the "appeal" contemplated by the Legislature connotes not only an appeal to the circuit court but also any subsequent appeal by the employer to this Court. Equally applicable to our statute is the observation of the Kansas court in respect of the Kansas statute:

"The workmen's compensation act establishes a procedure of its own covering every phase of the right to compensation and of the procedure for obtaining and enforcing it, which procedure is complete and exclusive in itself." *Id.* at 247.

Perhaps we ought to confess to having been a little shaken by the bitter dissent in *Tompkins*. Justice Schroeder, joined by Justice Fontron, thought the decision permits "an outrageous confiscation" of property. In *Casebeer v. Alliance Mutual Casualty Co.*, 203 Kan. 425, 454 P. 2d 511, 520 (1969), Justice Fontron, in a concurring opinion, said "[t]he unfortunate dilemma will continue to exist so long as the *Tompkins* decision is followed, unless it sooner be ended by legislative action." In *Griffith v. State Highway Comm'n*, 203 Kan. 672, 456 P. 2d 21, 30 (1969), Justice Schroeder, again dissenting, said "[t]he ignominious decision of the court in * * * [*Tompkins*] has ultimately led to the absurd result illustrated

in \* \* \* [*Casebeer*] and extended by this court in its opinion herein by adhering to *Casebeer.*" He went on to say that "[t]wo members of this court anxiously await legislative action to correct the *Tompkins* mistake." Despite the judicial *angst* of Justices Schroeder and Fontron, however, we see some significance in the fact that, as of this writing, neither their court nor the Kansas legislature has displayed any interest in correcting "the *Tompkins* mistake." Even if we were to say that we find the opinion in *Tompkins* somewhat less than persuasive, nevertheless we reach the same result here. We think the court in *Tompkins* overlooked the significance of the provision in § 44-556 of the Kansas statute giving appeals "precedence over *all* other hearings except those of like character." (Emphasis added.) The same provision in § 56 (a) of our statute, while not quite as sweeping, is no less significant.

The Company cites *Travelers Ins. Co. v. Belair,* 284 F. Supp. 168 (D. Mass. 1968), and *Employers' Mutual Liability Ins. Co. v. McLellan,* 290 F. Supp. 910 (S.D. N.Y. 1967), in support of its contention. However, it overlooks the fact that both of those cases were controlled by the Longshoremen's and Harbor Workers' Compensation Act, § 21 (b), 33 U.S.C.A. § 921 (b), which permits an injunction to stay an award if it can be shown that irreparable damage would ensue to the employer. In neither case, however, was such a condition found to exist. *See also Holland America Ins. Co. v. Rogers,* 308 F. Supp. 1031 (N.D. Calif. 1970). Oddly enough these three cases hold that the inability of the claimants to repay upon reversal is insufficient to constitute irreparable damage. *See, e.g., Higgins Inc. v. Donovan,* 249 F. Supp. 941, 942 (E.D. La. 1966), *aff'd per curiam* 373 F. 2d 18 (5th Cir. 1967).

As we see it, when the Legislature enacted the "no stay" provision in § 56 (a) it must have foreseen the possibility, and as well the probability, that payments would be made to claimants whose awards subsequently would be vacated on appeal. That it made no provision

for the restitution of those payments suggests to us that restitution was considered and rejected, and that, in lieu thereof, the disposition of appeals was expedited by giving them precedence over all cases except criminal cases. Surely this can hardly be said to serve any purpose other than the mitigation of the employer's obligation to pay as ordered until the appeal has been decided. It is of interest to note that, in 1951, the late John T. Tucker, then sitting in the Baltimore City Court, reached the same conclusion in a case much like the case at bar, *Maryland Casualty Co. v. Kohler*, Docket 85/726/015616. It is of interest also to note that Mr. Pressman states categorically that the employer cannot recover any overpayments made to the claimant in the event of a reversal of the decision of the Commission. M. Pressman, *Workmen's Compensation in Maryland* § 4-15 (1970).

The argument that Treadwell has been unjustly enriched is appealing, to be sure, but it must, nevertheless, be rejected. In support of its position the Company cites *Woods v. Safeway System, Inc.*, 102 R. I. 493, 232 A. 2d 121 (1967). In an earlier *Woods* appeal (101 R. I. 343, 223 A. 2d 347), the court reversed the decree of the Commission awarding compensation to Woods. The Commission thereafter refused to incorporate in its final decree a provision, proposed by the insurer, calling for the repayment of the money it had paid out before the appeal. The insurer appealed (102 R. I., *supra*). The court upheld the Commission but it said the legislature's failure to provide for reimbursement did not bar the insurer from instituting a civil action based on the theory of unjust enrichment. The insurer thereafter obtained judgments against Woods for $759, against his hospital for $825, and against his orthopedist for $260. The orthopedist and the hospital appealed. *Merchants Mutual Ins. Co. v. Newport Hospital*, 272 A. 2d 329 (R. I. 1971). Woods did not appeal. The court had no doubt the legislature, if it wished, could "enact a properly drawn statute which would bar a successful insurer appellant from recovering benefits paid as a consequence of a reversed

decree." Rejecting the contention of the hospital and the physician that "only * * * [Woods] was unjustly enriched by the extinguishment" of his debt to them, the court concluded that they "would be unjustly enriched *at the expense of the plaintiff* [insurer] if they were allowed to retain the funds paid to them." Chief Justice Roberts and Justice Powers dissented.

We see a significant distinction between *Merchants, supra,* and the case at bar. In *Merchants* the court based its decision not only on the absence of a provision in the statute specifically barring an insurer from maintaining a civil suit to recover payments but also on the fact that there was nothing in the general statutory scheme from which a contrary legislative intent could be inferred. As we have said we think the language of our statute, § 56 (a), reflects a legislative intent to preclude "recovery back" upon any theory, except fraud perhaps. If we are mistaken in this regard the General Assembly will know how to enlighten us.

*Judgment affirmed.*
*Costs to be paid by the appellant.*