703 A.2d 150

PHILIP ELECTRONICS NORTH AMERICA, et al.

v.

Patricia WRIGHT.

No. 12, Sept. Term, 1997.

Court of Appeals of Maryland.

Dec. 12, 1997.

210

Craig T. Walsworth, Campen & Walsworth, P.A., Easton, Donald S. Saiontz, Robert J. Zarbin, Saiontz & Kirk, P.A., Baltimore, on brief, for petitioner.

Robert J. Zarbin (Donald S. Saiontz, Saiontz & Kirk, P.A., on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and ROBERT L. KARWACKI, J. (retired), Specially Assigned.

RAKER, Judge.

We are called upon in this case to interpret the Workers' Compensation Act, Maryland Code (1991 Repl.Vol., 1997 Supp.), Title 9 of the Labor and Employment Article (hereinafter "Act").[1] We must determine whether, after an award to a claimant is reduced pursuant to a petition for judicial review, the employer is entitled to a credit for the total amount of money paid to the claimant before the reduction of the original award, or whether the appropriate credit is the number of weeks the employer paid benefits prior to the reduction. We shall hold that a credit based upon the number of weeks the employer has paid benefits is proper.

## I.

This case arose out of a knee injury suffered by claimant Patricia Wright ("Wright") on February 7, 1990 during the course of her employment. Subsequently, while attempting to rehabilitate her injured left knee, Wright developed an adverse psychological condition related to her physical injury. Pursuant to those injuries, Wright filed a claim for compensa-

---

1. Unless otherwise indicated, all statutory references hereinafter are to Maryland Code (1991 Repl.Vol., 1997 Supp.), Labor and Employment Article.

tion with the Maryland Workers' Compensation Commission ("Commission") against her employer, Philip Electronics North America, and its insurer, Travelers Indemnity Company of Illinois (collectively "Philip Electronics").

On November 19, 1992, the Commission conducted a hearing to determine the amount of compensation due Wright under the Act. By written order, on November 30, 1992, the Commission found that Wright had suffered a permanent partial disability loss of 50% of the use of her body as a whole, under "other cases," due to the injury to her knee and the resulting psychological condition.[2] *See* § 9–627(k). Accordingly, the Commission ordered Philip Electronics to pay Wright permanent partial disability benefits at the rate of $178 per week for 333 weeks pursuant to § 9–630.

Both Philip Electronics and Wright filed a petition for judicial review in the Circuit Court for Dorchester County. After hearing the evidence, on November 23, 1993, a jury returned a verdict finding that Wright had sustained a 40% loss of the use of her body as a whole as a consequence of the injuries arising out of her employment. Upon remand, on November 17, 1994, the Commission recalculated Wright's benefits, and found that she was entitled to $144 per week for 200 weeks. Significantly, the Commission also gave Philip Electronics a credit for the amount of the monetary payments made under the Commission's original order of November 30, 1992.

Aggrieved by the Commission's decision to allow Philip Electronics a credit for the total amount of monetary benefits paid under the Commission's original order, Wright filed a second petition for judicial review in the Circuit Court for

---

**2.** In addition to the permanent partial disability benefits awarded, the Commission awarded Wright temporary total disability benefits amounting to $4,988.00. These benefits were paid at the rate of $266.80 per week from February 10, 1990 to April 30, 1990; from April 12, 1991 to June 9, 1991; and from June 18, 1991 to September 17, 1991. The Commission also awarded Wright advanced benefits through August 11, 1992.

Dorchester County. On September 22, 1995, the circuit court granted Philip Electronics' motion for summary judgment, also concluding that Philip Electronics was entitled to a credit for the total amount of monetary benefits already paid. Wright subsequently filed a timely notice of appeal to the Court of Special Appeals.

Rejecting the "total monetary" credit approach advocated by Philip Electronics, the intermediate appellate court reversed the judgment of the circuit court. *See Wright v. Philip Electronics,* 112 Md.App. 642, 685 A.2d 1216 (1996). This Court then granted Philip Electronics' petition for writ of certiorari to resolve the primary legal issue presented by this case. We now affirm.

## II.

Before this Court, Philip Electronics argues that the Court of Special Appeals erred by holding that an employer is entitled only to credit for the number of weeks of benefits paid, rather than a credit for the total monetary sum expended, after an initial award by the Commission has been reduced by the circuit court. Philip Electronics' argument is primarily an equitable one: It is unjust for a claimant to receive benefits greater than the amount awarded by the trier of fact in a petition for judicial review at the circuit court. To illustrate, Philip Electronics cites the facts of this case. The jury found that Wright suffered a 40% loss of the use of her body as a whole as a consequence of her work-related injuries. Under the statutory framework, this finding translated into benefits of $144 per week for 200 weeks, for a total of $28,800. At the time of the filing of the petition for judicial review which is the subject of this appeal, Philip Electronics had paid Wright benefits totaling $32,772; and should the Court of Special Appeals' holding be affirmed, with Philip Electronics consequently obligated to pay 53 more weeks in benefits, the end

result would be payments totaling $39,600[3]—or $10,800 more than the amount mandated by the jury verdict.

Philip Electronics contends this $10,800 overpayment unfairly deprives it of rightful funds, as well as unjustly enriching Wright. Philip Electronics emphasizes it does not wish to "recover back" funds already paid to Wright, but rather wishes only an offset against the debt owed to her consistent with the decision of the jury in this case.[4]

In contrast, Wright argues the Court of Special Appeals correctly concluded that, after the reduction of an award by the circuit court, an employer's credit should be based upon the number of weeks that an employer has paid benefits. Wright contends the applicable provisions of the Act are written in terms of weeks of disability, thereby implying that this is the appropriate frame of reference to determine the proper credit. Wright also argues that an approach focusing only upon the total amount of money paid to a claimant is inconsistent with the purposes of the Act. We agree with Wright.

### III.

The Maryland Workers Compensation Act was originally enacted in 1914 to compensate employees for the loss of earning capacity resulting from accidental injury, disease, or

---

**3.** These monetary figures are taken from Philip Electronics' brief before this Court. Assuming the employer has already paid $32,772, then 53 additional weeks at $144 per week yields a total of $40,404. This discrepancy is neither explained in Philip Electronics' brief, nor readily apparent from the record.

**4.** Philip Electronics also argues at length that affirming the judgment of the Court of Special Appeals would be detrimental to claimants if the reasoning of the intermediate appellate court were applied to cases where an award is *increased* after the filing of a petition for judicial review, and the Commission must then determine whether to retroactively increase the award based on the number of weeks of benefits previously paid by the employer, or based on the total amount of monetary benefits previously received by the claimant. The issue is not presented in this case, and we express no opinion on that scenario. *See* Md. Rule 8–131(a).

death occurring during the course of employment. *DeBusk v. Johns Hopkins,* 342 Md. 432, 437, 677 A.2d 73, 75 (1996). Under the Act, an employer is liable to an employee for such an injury regardless of fault. § 9–501(b); *Great Atlantic Tea v. Imbraguglio,* 346 Md. 573, 582, 697 A.2d 885, 889–90 (1997). Ordinarily, the compensation provided by the Act is the employee's exclusive remedy for a job-related injury. § 9–509; *Hastings v. Mechalske,* 336 Md. 663, 672, 650 A.2d 274, 278 (1994).

As we have repeatedly emphasized, the Act is remedial in nature and " 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes.' " *Para v. Richards Group,* 339 Md. 241, 251, 661 A.2d 737, 742 (1995) (quoting *Howard Co. Ass'n Retard. Cit. v. Walls,* 288 Md. 526, 530, 418 A.2d 1210, 1213 (1980)); *see* § 9–102(a). Thus, in interpreting the Act, we do not apply the canon of construction that a statute in derogation of the common law should be strictly construed. § 9–102(b). Moreover, all sections of the Act must be read together, in conjunction with one another, to discern the true intent of the legislature. *Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 466–67, 620 A.2d 340, 342 (1993); *Ryder Truck Lines v. Kennedy,* 296 Md. 528, 537, 463 A.2d 850, 856 (1983). Of course, we seek to avoid an interpretation which would lead to an untenable or illogical outcome. *Greco v. State,* 347 Md. 423, 429, 701 A.2d 419, 422 (1997); *Waskiewicz v. General Motors Corp.,* 342 Md. 699, 708, 679 A.2d 1094, 1099 (1996); *see also Superior Builders, Inc. v. Brown,* 208 Md. 539, 543, 119 A.2d 376, 378 (1956) ("The Act should receive a practical construction, and should be so interpreted and construed as to effectuate its general purpose.").

In construing the Act, as in construing all statutes, the paramount objective is to ascertain and give effect to the intent of the legislature. *Marriott Employees v. MVA,* 346 Md. 437, 444, 697 A.2d 455, 458 (1997); *Bowen v. Smith,* 342 Md. 449, 454, 677 A.2d 81, 83 (1996). In interpreting the Act, we apply the following general principles. First, if the plain

meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end. *Marriott Employees,* 346 Md. at 445, 697 A.2d at 458; *Frank v. Baltimore County,* 284 Md. 655, 661, 399 A.2d 250, 254 (1979); *see Polomski v. Baltimore,* 344 Md. 70, 75–76, 684 A.2d 1338, 1340 (1996). Second, when the meaning of the plain language is ambiguous or unclear, we seek to discern the intent of the legislature from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based. *DeBusk,* 342 Md. at 437, 677 A.2d at 75. Last, applying a canon of construction specific to the Act, if the intent of the legislature is ambiguous or remains unclear, we resolve any uncertainty in favor of the claimant. *Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757, 761–62 (1995); *Lovellette v. Baltimore,* 297 Md. 271, 282, 465 A.2d 1141, 1147 (1983).

This Court, however, may not stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail. *Morris v. Board of Education,* 339 Md. 374, 384, 663 A.2d 578, 583 (1995). Similarly, the Court may not create ambiguity or uncertainty in the Act's provisions where none exists so that a provision may be interpreted in favor of the injured claimant. *R & T Construction v. Judge,* 82 Md.App. 700, 709, 573 A.2d 96, 100 (1990), *modified,* 323 Md. 514, 594 A.2d 99 (1991). Bearing these principles in mind, we now turn to the case at hand.

## IV.

This case presents a straightforward question of law. On November 17, 1994, the Commission recalculated the benefits due Wright at $144 per week for 200 weeks, a total sum of $28,800. As of that date, the payments by Philip Electronics to Wright far exceeded $28,800. Yet Philip Electronics had

only paid benefits to Wright for 147 weeks.[5] Philip Electronics seeks to offset the total payments it has already made to Wright against the sum of $28,800, thus satisfying the amount Philip Electronics owes to Wright pursuant to her claim under the Act. Conversely, Wright argues that under Maryland law, Philip Electronics is entitled to a credit for 147 weeks of benefits paid, thus entitling her to another 53 weeks of benefits at $144 per week.

We conclude the language of § 9-627(k), as well as the language of § 9-629 and § 9-630, clearly and unambiguously demonstrate a legislative commitment to the payment of permanent partial disability benefits within a weekly framework. The purposes sought to be achieved by the Act further reinforce this legislative intent. In addition, Philip Electronics' argument that the payment to Wright of another 53 weeks of benefits is inequitable, and amounts to an unjust windfall to her, fails when analyzed within the circumstances surrounding the statutory history of the Act.

A.

Section 9-627(k) authorized Wright's award of permanent partial disability benefits in this case. That statutory provision states:

(k) *Other cases.*—(1) In all cases of permanent partial disability not listed in subsections (a) through (j) of this section, the Commission shall determine the percentage by which the industrial use of the covered employee's body was impaired as a result of the accidental personal injury or occupational disease.

(2) In making a determination under paragraph (1) of this subsection, the Commission shall consider factors including:

(i) the nature of the physical disability; and

---

**5.** The total of 147 weeks of benefits paid by Philip Electronics to Wright is comprised of 118 weeks paid under the original order of November 30, 1992, and 29 weeks as a credit for monies advanced to Wright while she was awaiting the original hearing of November 19, 1992.

(ii) the age, experience, occupation, and training of the disabled covered employee when the accidental personal injury or occupational disease occurred.

(3) The Commission shall award compensation to the covered employee in the proportion that the determined loss bears to 500 weeks.

(4) Compensation shall be paid to the covered employee at the rates listed for the period in §§ 9–628 through 9–630 of this Part IV of this subtitle.

As paragraph (4) of subsection (k) of § 9–627 indicates, the award of permanent partial disability benefits is governed by three independent sections of the Act. Section 9–628, not relevant here, authorizes compensation for less than 75 weeks. Section 9–630, which governs compensation to an injured worker for a period of greater than 250 weeks, authorized Wright's original award on November 30, 1992 by the Commission. When Wright's award was reduced to 200 weeks, that award was granted pursuant to § 9–629, which covers compensation for a period equal to or greater than 75 weeks, but less than 250 weeks. The first specific statutory provision pertinent to this case, § 9–629, reads as follows:

### § 9–629. Compensation for period equal to or greater than 75 weeks but less than 250 weeks.

If a covered employee is awarded compensation for a period equal to or greater than 75 weeks but less than 250 weeks, the employer or its insurer shall pay the covered employee weekly compensation that equals two-thirds of the average weekly wage of the covered employee but does not exceed one-third of the State average weekly wage.

The other statutory provision relevant to the issue we resolve today, § 9–630, states in pertinent part:

### § 9–630. Serious disability—Compensation for 250 weeks or more.

(a) *In general.*—(1) Except as provided in paragraph (2) of this subsection, if a covered employee is given an award or a combination of awards resulting from 1 accidental personal

injury or occupational disease for 250 weeks or more under § 9–627 of this subtitle:

(i) the Commission shall increase the award or awards by one-third the number of weeks in the award or awards, computed to the nearest whole number; and

(ii) the employer or its insurer shall pay the covered employee weekly compensation that equals two-thirds of the average weekly wage of the covered employee, but does not exceed 75% of the State average weekly wage.

(2) An award for disfigurement or mutilation under § 9–627(i) of this subtitle may not be used to make up the 250 weeks under paragraph (1) of this subsection.

These statutory provisions reflect the intent of the General Assembly that the payment of permanent partial disability benefits be based upon a weekly framework. Of greatest significance, the specific sections governing the payment of benefits, § 9–629 and § 9–630, are distinguished by the number of weeks of compensation awarded. The general statutory provision, § 9–627(k)(3), also states that benefits shall be paid "in the proportion that the determined loss bears to 500 weeks." Again, the Act emphasizes the weekly nature of an award of benefits.

The language of the specific sections of the Act also reinforces the legislative focus upon the weekly nature of the payment scheme. Both § 9–629 and § 9–630(a)(1)(ii) expressly state that "the employer or its insurer shall pay the covered employee weekly compensation." Section 9–630(a)(1) speaks of a covered employee being awarded compensation "for 250 weeks or more," and § 9–630(a)(1)(i) mandates that "the Commission shall increase the award or awards by one-third the number of weeks." Finally, the Act states that "[a]n award for disfigurement or mutilation under § 9–627(i) of this subtitle may not be used *to make up the 250 weeks* under paragraph (1) of this subsection." § 9–630(a)(2) (emphasis added). It is telling that in barring an offset against an award from another subsection of the Act, the General Assembly chose to

characterize an award under § 9–630(a) in terms of weeks, rather than as a monetary amount.

Writing for the Court of Special Appeals in this case, Judge Fischer correctly reached the identical conclusion:

The "weekly credit" approach is consistent with the Act's benefit structure. It follows naturally that if the compensation structure is expressed in terms of "weeks," then any credit for previous payments should also be expressed by "weeks."

*Wright v. Philip Electronics,* 112 Md.App. 642, 649–50, 685 A.2d 1216, 1219 (1996). The plain language of the Act leads us to conclude that the Legislature expressed a commitment to the payment of permanent partial disability benefits based on a weekly framework, rather than focusing upon the total monetary value of such an award. *See Sturgis v. International Paper Co.,* 525 So.2d 813, 815 (Miss.1988) ("[T]he credit is for the week, not for a number of dollars, and the excess cannot be carried over as a credit against other weeks of liability.") (internal quotation marks and citation omitted); *General Elect. Co. v. Morris,* 670 S.W.2d 854, 856 (Ky.1984) ("By allowing full [dollar-for-dollar] credit, the claimant ... could be deprived of many future periodic payments."); *see also* 4 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 57.47, at 10–276—10–278 (1997).

A prior decision of this Court, *St. Paul Fire & Mar. Ins. v. Treadwell,* 263 Md. 430, 283 A.2d 601 (1971), supports this interpretation of the Act. *Treadwell* dealt with the analogous issue of whether an employer could "recover back" monies paid to a claimant after the original award to the worker was reduced by the circuit court. In analyzing the Act as it existed at that time, the Court observed that:

while the statute, Code (1964 Repl.Vol.), Art. 101, does not contain explicit language authorizing the recovery by an employer (or its insurer) of payments found on appeal to have been awarded erroneously, neither does it, in so many words, forbid the recovery of such payments.

*Id.* at 431, 283 A.2d at 602.   The Court in *Treadwell* found the existence of the anti-stay provision of the Act determinative to the resolution of the issue presented by that case.   *See* § 9–741.[6]   Our predecessors reasoned that:

> [W]hen the Legislature enacted the "no stay" provision in [Maryland Code (1964 Repl.Vol.), Art. 101,] § 56(a) it must have foreseen the possibility, and as well the probability, that payments would be made to claimants whose awards subsequently would be vacated on appeal.   That it made no provision for the restitution of those payments suggests to us that restitution was considered and rejected, and that, in lieu thereof, the disposition of appeals was expedited by giving them precedence over all cases except criminal cases.   Surely this can hardly be said to serve any purpose other than the mitigation of the employer's obligation to pay as ordered until the appeal has been decided.

*Id.* at 437–38, 283 A.2d at 605.   The *Treadwell* Court concluded that "the language of our statute ... reflects a legislative intent to preclude 'recovery back' upon any theory, except fraud perhaps."   *Id.* at 439, 283 A.2d at 606.

The rationale of *Treadwell* strongly suggests the result we reach today.   Currently, under the Act, the reduction of an award by the circuit court under § 9–627(k) from 50% or greater impairment, to a degree of impairment less than that percentage, both reduces the number of weeks of compensation and the monetary amount of that weekly benefit.   In this

---

**6.**   The anti-stay provision of the Act, currently codified as § 9–741, states:

**§ 9–741.   Appeal is not a stay.**
An appeal is not a stay of:
> (1) an order of the Commission requiring payment of compensation; or
> (2) an order or supplemental order of the Commission requiring the provision of medical treatment.

Although the Act refers to an action for judicial review as an "appeal," it is not actually an appeal.   Rather, the filing of a petition for judicial review is an original action in the circuit court.   *Colao v. County Council,* 346 Md. 342, 359, 697 A.2d 96, 104 (1997); *Gisriel v. Ocean City Elections Board,* 345 Md. 477, 495–96, 693 A.2d 757, 766 (1997).

case, for instance, Wright's benefits were reduced from $178 to $144 per week. The General Assembly must have foreseen the reasonable possibility that after the filing of a petition for judicial review and the reduction of an award, the employer might have already paid benefits pursuant to the Commission's original award in excess of the gross amount of the recalculated benefits.

We find the reasoning of the *Treadwell* court persuasive in this case. The fair inference is that the General Assembly, having made no provision allowing an employer to offset payments made prior to the reduction of an award against subsequent, recalculated benefits, considered and rejected such a possibility. *See Treadwell*, 263 Md. at 437–38, 283 A.2d at 605; *see also Montgomery County v. Lake*, 68 Md.App. 269, 275, 511 A.2d 541, 544 (1986) ("[S]ince the compensation statute does not provide a procedure to offset separate claims when overpayment results, the Legislature did not intend to permit this procedure."). We note that courts from other jurisdictions, in construing analogous provisions of their respective workers' compensation statutes, have drawn the similar conclusion that the absence of legislative authority to grant an employer a credit for previous payments to a claimant indicates that such authority does not exist. *Ransier v. State Indus. Ins. System*, 104 Nev. 742, 766 P.2d 274, 277 (1988); *Georgia–Pacific v. Piwowar*, 305 Or. 494, 753 P.2d 948, 954 (1988); *Kerans v. Industrial Comm'n of Utah*, 713 P.2d 49, 55 (Utah 1986); *In re Johner*, 643 P.2d 932, 935 (Wyo.1982); *American Mut. Ins. Cos. v. Murray*, 420 A.2d 251, 251–52 (Me.1980); *A T & T Network Systems v. Broussard*, 885 P.2d 684, 686 (Okla.Ct.App.1994); *see Croft v. Pan Alaska Trucking, Inc.*, 820 P.2d 1064, 1066–67 (Alaska 1991); *see also Petroleum Helicopters v. Nancy T. Garrett, L.P. T.*, 23 F.3d 107, 109–10 (5th Cir.1994) (concluding that under the federal Longshore and Harbor Workers' Compensation Act, the only method for an employer to seek reimbursement of past payments is through offset provisions specifically mandated by statute); *Stevedoring Servs. of America, Inc. v. Eggert*, 953 F.2d 552, 555–57 (9th Cir.1992) (same).

In support of its contention that Maryland law supports a dollar credit in this case, rather than a credit for the number of weeks benefits have been paid, Philip Electronics cites *Stapleford v. Hyatt,* 330 Md. 388, 624 A.2d 526 (1993). Rather than aiding Philip Electronics' argument, our decision in that case actually lends support to the result we reach today. In *Stapleford,* a worker reopened a previous claim under the Act,[7] and was awarded additional compensation due to the worsening of his condition. *Id.* at 390, 624 A.2d at 526–27. The statutory provision at issue in *Stapleford* was current § 9–630(d),[8] and the primary issue presented was the correct application of that statutory provision in a case where the compensation awarded originally was paid prior to the reopening of a claim. *Id.*

The Court in *Stapleford* concluded by setting forth the proper method for calculating serious disability benefits after a claimant's condition has worsened and his or her claim has been reopened:

> The number of weeks of compensation paid and payable under the revised disability assessment should be augmented by one-third, that number of weeks should be reduced by the weeks of compensation actually paid to the claimant under any previous order of the Commission, and the balance of weeks of compensation should be awarded to the claimant at the "serious disability" rate.

*Id.* at 402, 624 A.2d at 532. Not surprisingly, the parties in this case interpret the passage differently. Wright focuses on the language mandating "that [the] number of weeks should be reduced by the weeks of compensation actually paid," as

---

7. The claimant in *Stapleford v. Hyatt,* 330 Md. 388, 390, 624 A.2d 526, 526–27 (1993), reopened his claim pursuant to Maryland Code (1957, 1985 Repl.Vol., 1990 Supp.), Art. 101, § 40(b). That provision has been recodified, with only minor stylistic changes, as § 9–736(a).

8. When *Stapleford* was decided, current § 9–630(d) was then codified as part of Maryland Code (1957, 1985 Repl.Vol., 1990 Supp.), Art. 101, § 36(3)(a)(iii). *See Stapleford,* 330 Md. at 390 n. 1, 624 A.2d at 527 n. 1. Except for stylistic changes, the two provisions are substantively equivalent.

well as the language stating that "the balance of weeks of compensation should be awarded." According to Wright, this focus on compensation awarded as a number or balance of weeks supports the argument that a weekly credit is appropriate in this case. By contrast, Philip Electronics seizes on the "actually paid" language of *Stapleford* in support of its contention that this passage reflects a determination that an employer should be given credit for 'all prior monies actually paid.'

As previously discussed, we agree with Wright's interpretation that in drafting § 9–630, the General Assembly established a payment framework based upon weekly benefits, rather than a strict monetary equation, and the quoted passage from *Stapleford* implicitly embraces this conclusion as well. More importantly, *Stapleford* dealt with a statutory provision specific to the primary issue in that case. Section 9–630(d) reads:

> (d) *Reopening.* —If a covered employee receives additional compensation for a disability on a petition to reopen for serious disability, the additional compensation may not increase the amount of compensation previously awarded and paid.

By use of the phrase "amount of compensation," the General Assembly intended this subsection of the Act to limit the total monetary amount awarded. To the extent the "actually paid" language of *Stapleford* reflects a credit based upon the total amount of money actually paid to a claimant, rather than the number of weeks of compensation, this result is expressly contemplated by § 9–630(d). *See Polomski v. Baltimore,* 344 Md. 70, 82, 684 A.2d 1338, 1344 (1996) ("It is . . . reasonable to conclude that because the two statutes say different things, they mean different things. . . ."). Taken together, *Treadwell, Stapleford,* and the plain language of the Act stand for the proposition that the General Assembly intended that an employer's credit for the payment of permanent partial disability benefits be based upon the number of weeks of compensation previously paid, absent clear legislative expression to the contrary. Accordingly, we hold that when a claimant's initial award by the Commission is reduced pursuant to a petition for

judicial review, an employer shall be entitled to a credit for the number of weeks of benefits actually paid in accordance with the original order, rather than a credit based upon the amount of money previously paid to the worker.

### B.

Our holding today comports with several basic purposes served by the Act. An award of benefits under the Act does not represent a civil judgment for an amount of lost wages. *Bowen v. Smith,* 342 Md. 449, 455 n. 3, 677 A.2d 81, 84 n. 3 (1996).[9] Instead, the primary purpose of the Act is to protect workers and their families from hardships resulting from work-related injuries by providing compensation to workers for loss of earning capacity. *Victor v. Proctor & Gamble,* 318 Md. 624, 628, 569 A.2d 697, 699 (1990). The Act also benefits the taxpayers of the State of Maryland in helping to prevent the State from having to assume the financial responsibility of caring for injured workers and their dependents. *Id.; see also Belcher v. T. Rowe Price,* 329 Md. 709, 737, 621 A.2d 872, 886 (1993) ("The needs and expectations of society, in addition to those of the work force, come into play.").

The result we reach today furthers both of these purposes. In this case, Wright will continue to receive the weekly payment of benefits for the allotted number of weeks, albeit reduced to accurately reflect the degree of her injury as determined by a jury. By contrast, the result advocated by Philip Electronics would immediately sever such weekly support, in direct contravention of one purpose of the Act. *See Bayshore Industries v. Ziats,* 229 Md. 69, 76–77, 181 A.2d 652, 656 (1962) (recognizing "the general policy which the prohibi-

---

**9.** The procedural framework under the Act highlights this principle. In an action for judicial review by the circuit court, the trier of fact makes no determination as to lost wages. Rather, the only issues presented for resolution are whether the claimant has suffered permanent partial disability; and, if so, the percentage of such disability. *Bethlehem–Sparrows Point Shipyard v. Damasiewicz,* 187 Md. 474, 478, 50 A.2d 799, 801 (1947).

tion against stay by reason of an appeal has been held ... to serve—that of affording day to day support to injured employees"). Moreover, in ensuring continued weekly support to an injured claimant whose award has been reduced, the citizens of this State are protected from having to care for workers, suddenly bereft of income, who had been unable or unwilling to appreciate the risk of their eventual lack of success before the circuit court. *Polomski*, 344 Md. at 76–77, 684 A.2d at 1341; *see Triangle Insulation v. Stratemeyer*, 782 S.W.2d 628, 630 (Ky.1990) ("An employee who has received an overpayment of income benefits should not be deprived of future income as a result of any such overpayment."); *Ransier*, 766 P.2d at 277 ("[S]uch a construction [of the statute] would place Ransier in the untenable position of using the benefits paid to him at the risk of having to repay them at a point when his family resources were even more greatly stressed."); *see also Benedict v. Office of Workers' Comp.*, 29 F.3d 1140, 1142 (7th Cir.1994) (noting that under federal law "recovery of an overpayment defeats the purpose of the Act where it would 'deprive a person of income required for ordinary and necessary living expenses'" (quoting 20 C.F.R. § 410.561c(a))) (footnote omitted).

Finally, we address Philip Electronics' argument that applying a credit based on the number of weeks an employer has paid benefits is somehow unjust or inequitable because the claimant will eventually be paid more in benefits than the amount awarded by the jury. We have already noted the initial flaw in this argument. The jury does not determine the amount of benefits, but instead finds only the percentage of disability to the body as a whole. The circuit court then remands the case to the Commission for a recalculation of the weekly award.

In addition, the employer in *Treadwell* made the same argument based on equitable considerations that Philip Electronics raises in this case. Although finding the argument that Treadwell had been unjustly enriched appealing, this Court nevertheless rejected it on the grounds that the Act reflects a legislative intent to preclude "recovery back." A

similar rationale applies in this case. Philip Electronics' argument that the overpayment to Wright is unjust or inequitable must be considered in light of the operation of the Act as a whole. *See Polomski,* 344 Md. at 76, 684 A.2d at 1340 ("[T]he Act has gone through several revisions, reflecting ... changes in societal attitudes, workplace realities, and, of course, political compromises.") (footnote omitted). A single transaction does not represent the appropriate focal point to determine the fairness or equity of the application of the Act. *See Waskiewicz v. General Motors Corp.,* 342 Md. 699, 712, 679 A.2d 1094, 1101 (1996) ("That the result in a[ ] particular case seems harsh is thus not enough to overcome the bar on reopening a claim after five years."); 1 LARSON, *supra,* § 2.20, at 1–5 (noting that the equity of a workers' compensation statute must be determined from a group as well as an individual perspective).

As this Court has noted in the past, the Act reflects the Legislature's considered judgment as to the appropriate allocation of resources between employers, employees, and the taxpayers of this State. *Polomski,* 344 Md. at 76–77, 684 A.2d at 1340–41. Significantly, Philip Electronics, as a party to this political equation, receives a valuable benefit in that they are relieved "from the vagaries of tort liability." *Id.* at 77, 684 A.2d at 1341. For instance, unlike a tort recovery, benefits paid pursuant to the Act compensate only for loss of earning capacity, and do not seek to return a claimant to his or her pre-disability state. 1 LARSON, *supra,* § 2.50, at 1–9.

> Compensation awarded on [a] fault-free basis under the statutory plan substitutes for an employee's common law right to bring a fault-based tort suit against an employer for damages resulting from the employee's injury or disablement on the job....

> \* \* \* \* \* \*

> Employers who purchase workers' compensation insurance and otherwise comply with the law of workers compensation can ... count on avoiding a negligence lawsuit.

*DeBusk v. Johns Hopkins,* 342 Md. 432, 438, 677 A.2d 73, 75–76 (1996); *see Queen v. Queen,* 308 Md. 574, 585, 521 A.2d 320, 326 (1987); Richard P. Gilbert & Robert L. Humphreys, Jr., Maryland Workers' Compensation Handbook § 15.0, at 304 (2nd ed.1993).

Such a sensitive balancing of respective interests is properly within the province of the General Assembly, absent a constitutional provision to the contrary. *Bowen,* 342 Md. at 459 n. 6, 677 A.2d at 86 n. 6; *Paul v. Glidden Co.,* 184 Md. 114, 119, 39 A.2d 544, 546 (1944). In recognizing that the legislature is the appropriate forum to balance the equity or fairness of a particular statutory provision in a workers compensation scheme, the Supreme Judicial Court of Maine cogently observed:

> To attempt to resolve this question by engrafting upon the statutory scheme judicially created doctrines of restitution would involve us in the establishment of broad social policy *in a field of law created by the legislature in response to legislative dissatisfaction with judicial solutions* to the problems of compensation for workers injured in industrial accidents.

*Murray,* 420 A.2d at 252 (emphasis added); *see Christensen v. Oshkosh Truck Corp.,* 12 F.3d 980, 987 (10th Cir.1993) (applying Utah law and reasoning that it is not within the prerogative of courts to fashion common law exceptions to the statute "because the workers' compensation statutes provide the exclusive remedy for work-related injuries").

In this case, the Commission's order of November 17, 1994 gave Philip Electronics credit for the total monetary amount of compensation previously paid to Wright, and offset that amount against her recalculated benefits. The Circuit Court for Dorchester County agreed with that decision. As the Court of Special Appeals correctly held, Philip Electronics was entitled to a credit only for the number of weeks of benefits actually paid pursuant to the Commission's original order.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE*

*COURT OF SPECIAL APPEALS TO BE PAID BY PETI-TIONERS.*