916 A.2d 1002

**Paul DEL MARR**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 60 Sept. Term, 2006.**

Court of Appeals of Maryland.

Feb. 9, 2007.

Douglas M. Gross (Chirumbole, Gross & Conrad, P.C., on brief), Gaitersburg, MD, for petitioner.

Michael J. Schreyer, Seidman & Schreyer, L.L.C., Waldorf, MD, brief of amicus curiae Maryland Trial Lawyers Ass'n.

Wendy B. Karpel, Associate County Atty. (Marc P. Hansen, Acting County Atty., Patricia P. Via, Chief Div. of Litigation, and Sharon V. Burrell, Associate County Atty.), all on brief, Rockville, MD, for respondent.

Robert C. Erlandson, Angela Garcia Kozlowski, Lord & Whip, P.A., Baltimore, MD, brief of amici curiae Maryland Defense Counsel, Inc. and Maryland Self-Insurers' and Employers' Compensation Ass'n.

David A. Skomba, Laura L. Stephens, Franklin & Prokopik, P.C., Baltimore, MD, brief of amici curiae Maryland Ass'n of Boards of Educ. Workers' Compensation Group Self-Ins. Fund; the Maryland Ass'n of Community Service Workers' Compensation Self-Ins. Group; the MARFY/CBH Workers' Compensation Self-Ins. Group; the Rockwood Cas. Ins. Co.; the Vanliner Ins. Co.; Waste Management of Maryland, Inc. and Penske Truck Leasing Co., L.P., in Support of respondent/appellee.

Argued Before BELL, C.J., RAKER, WILNER *, CATHELL, BATTAGLIA, GREENE and THEODORE G. BLOOM (Retired, specially assigned), JJ.

WILNER, Judge.

When an employee sustains a permanent partial disability as the result of an accidental injury covered under the Maryland Workers' Compensation law, the employee is entitled to compensation that is determined in accordance with schedules set forth in Maryland Code, §§ 9–627 through 9–630 of the Labor and Employment Article (LE). The compensation provided for in those schedules is expressed as a number of dollars per week for a fixed number of weeks.

Both the number of dollars per week and the number of weeks over which the compensation is to be paid depend on the nature and severity of the disability. For certain kinds of disabilities, involving mostly the loss of digits, limbs, and hearing, the number of weeks for which compensation is paid is fixed in the statute. *See* LE § 9–627(b) through (j). For

---

* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

other kinds of disabilities—those not listed in those subsections—the Workers' Compensation Commission, using criteria set forth in § 9–627(k), must first determine the percentage by which the industrial use of the employee's body was impaired as a result of the accidental injury. It then must award compensation based on the proportion that the determined loss bears to 500 weeks, subject to an enhancement for serious disability under § 9–630, at the weekly rates set forth in §§ 9–628 through 9–630.

Sections 9–628 through 9–630 provide for what practitioners in the field refer to as three tiers of compensation. With exceptions not relevant here, if compensation is awarded for less than 75 weeks, § 9–628(e) sets the amount of weekly compensation as one-third of the employee's "average weekly wage" up to a maximum of $114.[1] That is the lowest, or first, tier. If compensation is awarded for a period of between 75 and 249 weeks, § 9–629 sets the amount of weekly compensation as two-thirds of the employee's "average weekly wage" but not more than one-third of the State average weekly wage.[2] That is the middle, or second, tier. If compensation is awarded for 250 weeks or more, § 9–630 requires the Commission to increase the award by one-third the number of weeks and sets the amount of weekly compensation for that aggregate number of weeks at an amount that equals *two-thirds* of the employee's "average weekly wage" but not more than *75%* of the State average weekly wage. That is the third, or highest, tier.

As noted, each of these tiers provides for compensation based on a weekly rate for a set number of weeks and not as a lump sum amount. All of this works quite well and generally without complication if the award is not disturbed. For our purposes here, awards made by the Commission may be disturbed in two ways: (1) when a court, in an action for

---

1. The employee's "average weekly wage" is computed in accordance with LE § 9–602.

2. The State average weekly wage is determined annually by the Department of Labor, Licensing, and Regulation. *See* LE § 9–603.

judicial review of the award, decides that the Commission erred in some manner and remands for the calculation of a new award based on the court's finding, and (2) when, as the result of a worsening, improvement, or termination of the employee's disability, the Commission reopens the case and enters a new award to reflect the change in the employee's condition. LE § 9–736. In each of those situations, the question has arisen of whether or how the new award affects the compensation that was paid prior to entry of the new award in accordance with the award that was modified. We have dealt with that question before, and we are called upon in this case to deal with it again. Our answer in this case will be consistent with those given previously.

## BACKGROUND

In January, 2001, petitioner, Paul Del Marr, a master electrician employed by the Montgomery County Board of Education, suffered an accidental injury to his back while lifting a transformer in the course of his employment. Claiming an inability to continue working as a master electrician, Del Marr filed a claim for temporary total and permanent partial disability.[3] In May, 2002, the Commission, among other things, found that Del Marr had a 20% industrial loss of use of his body, half of which (10%) was attributable to the accidental injury and half of which (10%) was due to a pre-existing condition. In consequence of those findings, the Commission entered a permanent partial disability award requiring the Board and its insurer, Montgomery County, to pay Del Marr $114 per week for 50 weeks, commencing as of March 23, 2001, which was when his temporary total disability

---

3. In January, 2002—a year after the accident—Del Marr gave up his job as a master electrician and accepted a position with the Board teaching electricity at a county high school, at a lower salary. Initially, that involved just teaching in a classroom, but at some point, Del Marr was required to assist the students in actually wiring a home. During this period, Del Marr also worked part time at a side electrical business that he had and earned from that between $100 and $400 per week.

ended. That award was a first tier award—less than 75 weeks.

In August, 2002, Del Marr began complaining of a significant increase in pain and, on the recommendation of his physicians, underwent corrective surgery in November, 2002. On January 9, 2003, pursuant to a stipulation by the parties, the Commission amended its May, 2002 award to find a 24% industrial loss of use of the body, 14% being due to the accidental injury, and to increase the permanent partial disability compensation to $114 per week for 70 weeks, subject to a credit "for monies previously paid" under the May, 2002 order. The new award, still less than 75 weeks, remained a first tier award, and, because the rate of weekly payment remained the same, no issue arose as to any retroactive effect of the new award. Payment was simply extended for 20 weeks. The last payment under that order was made on February 5, 2003, based on Del Marr's return to work on January 27, 2003.

At some point, Del Marr filed another petition to reopen the case based on a worsening of his condition. After a hearing, the Commission entered a new (third) award on May 26, 2004, finding that Del Marr then had a 33% industrial loss of use of the body, 23% being due to the January, 2001 accidental injury. Compensation was set at $223 per week for a period of 115 weeks, commencing at the end of the compensation awarded under the January, 2003 order. That constituted a second tier award—more than 75 but less than 250 weeks— and would call for an additional gross payment of $25,645 ($223 times 115 weeks). The new compensation ordered was subject to a credit "for payments made" under the May, 2002 and January, 2003 orders.

Montgomery County, as the Board's insurer, sought judicial review of the Commission's order in the Circuit Court for Montgomery County. The County did not challenge the increase in the compensable disability to 23%, but rather the calculation of the credit allowed against the new award. The County had already paid Del Marr compensation for 70 weeks

at the rate of $114 per week—a total of $7,980—and it construed the Commission's order as limiting the credit to that dollar amount. In that event, it would owe Del Marr an additional $17,665 ($223 per week times 115 weeks ($25,645) less a credit of $7,980). In a motion for summary judgment, the County contended that it was entitled to a credit based on the number of weeks for which it already paid compensation rather than the number of dollars it had paid. It insisted that the award be construed to require the payment of $223 per week for only 45 weeks (115 minus 70), a total of $10,035. The difference amounts to $7,630.

The Circuit Court agreed with the County, granted the motion for summary judgment, and entered an order remanding the case to the Commission for entry of an order requiring the Board to pay 115 weeks of compensation at the $223 rate subject to a credit "for the number of weeks paid under the Order dated May 2, 2002 as Amended under the Order dated January 9, 2003." Del Marr appealed, arguing to the Court of Special Appeals, as he does now before us, that when a claimant reopens a claim for worsening of condition and the award is increased from a first tier injury to a second-tier injury, the credit is to be made on the basis of dollars paid rather than the number of weeks for which compensation was paid. The intermediate appellate court disagreed and affirmed the judgment of the Circuit Court. *See Del Marr v. Montgomery County,* 169 Md.App. 187, 900 A.2d 243 (2006). We shall, in turn, affirm the judgment of the Court of Special Appeals.

## DISCUSSION

We first dealt directly with the issue of how credits are to be applied when a new compensation award is entered in *Philip Electronics v. Wright,* 348 Md. 209, 703 A.2d 150 (1997). In that case, the Commission found that, as a result of an accidental injury, the claimant suffered a permanent partial disability loss of 50% of the use of her body and entered an award of compensation of $178 per week for 333 weeks. That constituted a third tier award—250 weeks or more. The

Circuit Court, in an action for judicial review of that award, found that the claimant suffered only a 40% loss of use of her body. Consistent with that finding, the Commission, on remand, entered a new award of $144 per week for 200 weeks. That reduced the award to a second tier award—less than 250 weeks. In the new award, the Commission gave Philips a credit for the entire amount paid under the initial award. The claimant, Wright, sought judicial review of that part of the new award, contending that Philips should be entitled to a credit based on weeks of prior payment, rather than the amount of dollars previously paid.

The gross amount payable under the new award was $28,800 ($144 per week times 200 weeks). If, as the Commission ordered, Philips was entitled to a dollar credit, it would have no further obligation, as the amount previously paid exceeded that sum. If, on the other hand, Philips was entitled to a credit for the 147 weeks for which it had paid compensation under the initial award, rather than the amount actually paid under the award, it would still owe compensation at the $144 rate for an additional 53 weeks. Philips complained that, if that were the case, it would owe $10,800 more than the aggregate amount of $28,800 due under the new award.

We agreed with the conclusion of the Court of Special Appeals that the credit should be based on the number of weeks for which compensation had been paid under the initial order and not the dollar amount paid under that order. We regarded the issue as one of statutory construction and thus strictly one of law. After reviewing the same statutes at issue here—LE §§ 9–627 through 9–630—we declared that "[t]he plain language of the Act leads us to conclude that the Legislature expressed a commitment to the payment of permanent partial disability benefits based on a weekly framework, rather than focusing upon the total monetary value of such an award." *Id.* at 221, 703 A.2d at 155. That framework governed the calculations of credits. Citing earlier decisions of this Court (principally *St. Paul Fire & Mar. Ins. v. Treadwell,* 263 Md. 430, 283 A.2d 601 (1971) and *Stapleford v. Hyatt,* 330 Md. 388, 624 A.2d 526 (1993)) and cases from other States,

we held that "when a claimant's initial award by the Commission is reduced pursuant to a petition for judicial review, an employer shall be entitled to a credit for the number of weeks of benefits actually paid in accordance with the original order, rather than a credit based upon the amount of money previously paid to the worker." *Id.* at 225–26, 703 A.2d at 158.

In *Philip Electronics,* the weekly credit approach worked out favorably to the claimant because the initial award had been reduced. We noted the employer's argument that, in the converse situation in which an initial award was *increased,* that approach might prove disadvantageous to the claimant, but we did not need to address that situation in that case. *See Philip Electronics, supra,* 348 Md. at 215, n. 4, 703 A.2d at 153, n. 4. That issue did come before us four years later in *Ametek v. O'Connor,* 364 Md. 143, 771 A.2d 1072 (2001), and our response was the same as in *Philip Electronics.*

In *Ametek,* the Commission found that the claimant, O'Connor, had a 10% loss of use of her body and ordered that compensation for the permanent partial disability be paid at the rate of $81 per week for 50 weeks. That was a first tier award. On judicial review, the Circuit Court found her disability to be a 70% loss of use of the body, and, on remand, the Commission entered a new award ordering compensation at the rate of $134 per week for 467 weeks—a third tier award. Following the approach we had taken in *Philip Electronics,* the Commission concluded that Ametek was entitled to a credit for the 50 weeks of compensation already paid and thus directed the employer to pay the new rate of $134 for only 417 weeks. In a second action for judicial review, the Circuit Court concluded, notwithstanding *Philip Electronics,* that the claimant should receive the higher amount for the entire period, and it therefore entered a judgment of $2,650, that being the $53 difference between the initial award of $81 per week and the new award of $134 per week for the 50 weeks. The Court of Special Appeals, declaring a weekly credit approach where the benefit is increased to be "an affront to the legislative scheme set forth in the Act," affirmed, *Ametek, Inc. v. O'Con-*

*nor,* 126 Md.App. 109, 122, 727 A.2d 437, 443 (1999), but we reversed.

We found *Philip Electronics* to be controlling. We iterated and confirmed its holding that the Legislature had "expressed a commitment to the payment of permanent partial disability benefits based on a weekly framework, rather than focusing upon the total monetary value of such an award" and concluded that "what we said in *Philip Electronics* applies with equal force to the case *sub judice." Ametek v. O'Connor, supra,* 364 Md. at 152, 771 A.2d at 1077, quoting from *Philip Electronics, supra,* 348 Md. at 221, 703 A.2d at 155. We held, expressly, that "the analysis applicable to cases involving the subsequent reduction of a workers' compensation award is just as compelling when applied to those cases in which the award has subsequently been increased." *Ametek, supra,* at 152, 771 A.2d at 1077. We pointed out that predictability and administrative ease were important in establishing the rules governing the award of permanent partial disability benefits and declared:

> "It simply will not do to have different rules, depending upon whether it is the claimant or the employer to whom the result is inequitable. Whether a credit is the amount the employer has paid or for the number of weeks the employer has paid should be determined on some principled and consistent basis and not made to depend upon which of the parties it will benefit. As the petitioner submits, 'The Act should not be interpreted differently depending on the outcome in different claims.' "

*Id.* at 159, 771 A.2d at 1081.

In this case, Del Marr asks us to do precisely what we declared in *Ametek* we would not do. He first seeks to distinguish *Ametek* and *Philip Electronics* on the basis that they involved modifications to an award by a court, on judicial review, rather than by the Commission on a reopening due to a worsening condition, and adds that the enactment of LE § 9–633 effectively overrules those two cases in any event and serves to resurrect a 1991 case from the Court of Special

Appeals, *Norris v. United Cerebral Palsy,* 86 Md.App. 508, 587 A.2d 557 (1991), that is inconsistent with *Ametek* and *Philip Electronics.* He argues that, in the limited circumstance of a permanent partial disability award being increased through a reopening procedure from a first tier award to a second tier award—namely, his case—the Commission either may or must allow a dollar credit, even if that results in a retroactive increase in compensation. We are not impressed with those arguments.

It is true that *Ametek* and *Philip Electronics* arose from modifications mandated by court judgments in judicial review actions, but that is a distinction without a difference. If anything, there is more reason to apply a weekly credit approach in reopening cases. When a modification is mandated by judicial decision in a judicial review action, it is because the court has found the award under review to be in error, and, from an equitable point of view, it is arguable that, because the award was wrong from the beginning, the parties should be placed in the same position they would have been in had the Commission entered the proper award in the first instance. In light of the statutory scheme, we found that kind o f argument unpersuasive.

The statutory scheme is even less hospitable to Del Marr's argument that a different approach should be followed when the award is increased as the result of a reopening. LE § 9–736(a), dealing with readjustments and modifications, provides, in relevant part, that "[i]f aggravation, diminution, or termination of disability takes place or is discovered after the rate of compensation is set or compensation is terminated, the Commission, on the application of any party in interest or on its own motion, may ... readjust *for future application* the rate of compensation...." (Emphasis added). Under Del Marr's approach of allowing a dollar credit rather than a weekly one, the adjustment would necessarily be retroactive rather than just "for future application." The employer would be required to pay more compensation than was statutorily allowed for the period prior to the time the worsening of the condition was found to exist. The weekly credit approach is

fully consistent with the legislative scheme that the employer pay compensation at the appropriate statutory rate for the disability that exists at the time the compensation is paid.

Del Marr seeks to create a little pigeonhole for himself by looking at LE § 9–630(d) and the addition of a new § 9–633 in 2001. LE § 9–630, as we observed, deals with a "serious disability" third tier award—compensation for 250 weeks or more. It was added to the Workers' Compensation Law in 1965 and provides for greatly enlarged benefits. The number of weeks for which benefits are paid, as determined in accordance with the statutory schedule, is automatically increased by one-third, and the weekly rate is much higher than a second tier benefit. As part of the 1965 enactment—long before either *Philip Electronics* and *Ametek* were decided—the Legislature included the provision, now appearing as § 9–630(d), that if an employee receives additional compensation on a petition to reopen for serious disability, the additional compensation may not increase the amount of compensation previously awarded and paid.

Del Marr notes that neither § 9–628 nor § 9–629 contain such a provision, and, from that absence, he argues that the prohibition against a retroactive increase applies only to modifications that increase the award to a third tier award. He finds succor as well from the enactment of § 9–633 in 2001, which provides, in relevant part, that, "[i]f an award of permanent partial disability compensation is reversed or modified by a court on appeal, the payment of any new compensation awarded shall be [ ] subject to a credit for compensation previously awarded." Del Marr notes that § 9–633 applies only to awards reversed or modified "on appeal," and therefore not to modifications made pursuant to a reopening.[4]

 We first note that neither § 9–630(d) nor § 9–633 state anything inconsistent with our holdings in *Philip Electronics*

---

**4.** Although the statutory text continues to refer to a judicial review action as an "appeal," the action is, in fact, an original action in the Circuit Court for judicial review. *See Philip Electronics, supra,* 348 Md. at 222, n. 6, 703 A.2d at 156, n. 6.

or *Ametek.* Indeed, they are entirely consistent with the view expressed in those holdings that a modification that serves to increase or decrease compensation, whether occasioned by a judgment emanating from a judicial review action or a reopening, may have prospective effect only, achieved by allowing a credit for compensation previously paid calculated on a weekly basis. There is nothing in the text of those statutes requiring a conclusion that the weekly credit approach is impermissible in a modification arising from a reopening that increases the compensation from a first tier to a second tier. Absent some clearer expression of legislative intent, we are not willing to balkanize the Workers' Compensation Law by creating special pigeonholes with different rules.

JUDGMENT OF COURT OF SPECIAL APPEALS AF-FIRMED, WITH COSTS.