*W. R. Grace & Co., et al v. Andrew P. Swedo, Jr.*, No. 82, September Term, 2013, *Florida Rock Industries, Inc., et al. v. Jeffrey P. Owens*, No. 91, September Term, 2013, and *Robert W. Coffee v. Rent-A-Center, Inc., et al.*, No. 92, September Term, 2013, Opinion by Adkins, J.

**MD. CODE (1991, 2008 REPL. VOL.), § 9-633 OF THE LABOR AND EMPLOYMENT ARTICLE — AWARD FOR PERMANENT PARTIAL DISABILITY REVERSED OR MODIFIED ON APPEAL — CREDIT FOR COMPENSATION PREVIOUSLY AWARDED AND PAID:** Because the Workers' Compensation Act clearly defines compensation as money, an Employer/Insurer should be credited for the total dollars previously paid under an award when that award is modified on appeal. This differs from the credit given in a reopening case, which is measured by weeks.

W. R. Grace & Co., et al. v. Andrew Swedo
Circuit Court for Baltimore County
Case No. 03-C-10-010051

Florida Rock Industries, Inc., et al. v.
Jeffrey P. Owens
Circuit Court for Saint Mary's County
Case No. 18-C-11-000613

Robert W. Coffee v. Rent-A-Center, Inc.,
et al.
Circuit Court for Baltimore City
Case No. 24-C-12-004002

Argued:  April 30, 2014

IN THE COURT OF APPEALS

OF MARYLAND

Nos. 82, 91 and 92
September Term, 2013

W. R. GRACE & CO., et al.
v.
ANDREW P. SWEDO, JR.

FLORIDA ROCK INDUSTRIES, INC., et al.
v.
JEFFREY P. OWENS

ROBERT W. COFFEE
v.
RENT-A-CENTER, INC., et al.

Barbera, C.J.,
Harrell
Battaglia
Greene
Adkins
McDonald
Cathell, Dale R., Retired,
        Specially Assigned

JJ.

Opinion by Adkins, J.

Filed:  July 22, 2014

In each of these three cases we are tasked with determining the appropriate method for crediting payments made under a workers' compensation award when that award is increased on appeal. The question is whether the credits are computed on the basis of the number of weeks paid or the amount of money expended. The answer can make a substantial difference in the bottom line paid and received. In resolving the issue in favor of the claimants in each of these cases, we rely on legislation passed specifically to supersede earlier decisions of this Court.

## FACTS AND LEGAL PROCEEDINGS

Because there are no disputed facts in these cases, and the questions presented are identical in each case, we will only briefly touch on the facts of each case. The different procedural posture of each case results in the employers sometimes being petitioners and sometimes respondents, and vice versa for the injured workers. Thus, we will dispense with our traditional Petitioner/Respondent designation of parties and instead collectively refer to the Employer/Insurers[1] ("Employers") and Workers when discussing the relevant cases and statutes.

### *No. 82, W.R. Grace and Co. v. Swedo*

Andrew P. Swedo, Jr. ("Swedo") was injured on November 3, 2002 while working for W.R. Grace & Co. ("Grace"). Swedo filed a claim with the Workers' Compensation Commission (the "Commission") seeking permanent total disability benefits, or, in the

---

[1] In each case, the employer's insurer is a co-party with the employer. Although our resolution of this case will have ramifications for the respective insurers, we shall focus our analysis on the relationship between the Employers and the Workers.

alternative, permanent partial disability benefits. After a hearing, the Commission found that Swedo had sustained a 70% permanent partial disability and awarded him $234 per week for 200 weeks. The disability was apportioned as follows: 40% permanent disability due to the workplace accident, and 30% permanent disability due to preexisting conditions. Swedo appealed this decision to the Circuit Court for Baltimore City. The jury agreed that Swedo suffered a 70% permanent partial disability, but found that he was 50% disabled due to the accident, and 20% disabled due to preexisting conditions. The Circuit Court subsequently vacated and remanded the award on appeal. The Commission then amended its order to $525 per week for 333 weeks. At the time of this amended award, Grace had already paid under the initial award for 148 weeks.

Swedo filed Issues with the Commission requesting clarification as to whether Grace was entitled to a credit based on the total number of weeks it had paid under the initial award, or total dollars paid. The Commission ordered that Grace be credited for the weeks paid. Swedo appealed this determination to the Circuit Court for Baltimore County, which affirmed the Commission. Swedo then appealed to the Court of Special Appeals, which reversed the Circuit Court, holding that employers should receive credit based on the total dollars paid. Grace petitioned this Court for *certiorari*, which we granted.

### No. 91, Florida Rock Industries v. Owens

In May 2005, Jeffrey P. Owens ("Owens") sustained an accidental lower back injury while working for Florida Rock Industries, Inc. ("Florida Rock"). On February 26, 2010, the Commission issued an order finding that Owens had sustained a permanent

2

partial disability resulting in a 30% industrial loss of the use of his body as a result of the accident, and ordered Florida Rock to make weekly payments of $257 for 150 weeks, retroactive to July 15, 2008.  On judicial review in the Circuit Court for Saint Mary's County, a jury reversed the Commission's decision, finding that Owens had suffered a permanent partial disability amounting to a 50% industrial loss of the use of his body.  On remand from the Circuit Court, the Commission amended its order to an award of $401 per week for 333 weeks.  This order did not credit Florida Rock for the weeks of benefits already paid.

Florida Rock petitioned the Circuit Court for judicial review of the Commission's order, and filed a motion for summary judgment requesting credit for the 150 weeks of benefits already paid.  Owens conceded that a credit was proper, but argued that the credit should be based on the "monetary benefits paid" rather than the number of weeks paid.  The court agreed with Owens, and found that Florida Rock was entitled to a credit for the dollar amount of benefits already paid to Owens under the Commission's February 26, 2010 award.  Florida Rock appealed to the Court of Special Appeals, which affirmed the Circuit Court in an unreported opinion.  We granted Florida Rock's Petition for Writ of Certiorari.

*No. 92, Coffee v. Rent-A-Center, Inc.*

Robert W. Coffee ("Coffee") was injured while working as an account manager for Rent-A-Center in December of 2007.  After filing a workers' compensation claim, the Commission determined that he sustained a permanent partial disability equating to a 12% industrial loss of the use of his back, and awarded Coffee 60 payments of $114

3

retroactive to March 21, 2009. Coffee petitioned the Circuit Court for Baltimore City for review of this award. The jury found that Coffee's permanent partial disability amounted to a 16% industrial loss, and consequently, the Commission's award was reversed in part. The Commission issued an amended award on January 18, 2012, granting Coffee an award of $283 per week for 80 weeks, retroactive to March 21, 2009. During the pendency of this appeal, Rent-A-Center paid Coffee all 60 installments of his weekly award. As a result, the initial award of $6,840 was paid in full by the time the Commission issued its amended award.

Rent-A-Center did not appeal the amended award or request an accounting as to its prior payments. Yet Rent-A-Center did not pay the amended award in full. Rather, Rent-A-Center deducted the 60 weeks already paid from the award, and sent Coffee a check for $5,660, representing the 20 week increase at $283 per week. Coffee filed Issues with the Commission to compel payment of the difference between the total awards computed according to the total dollars paid, rather than according to the total weeks paid. The Commission determined that a weeks-paid standard was the appropriate standard, pursuant to this Court's holding in *Ametek, Inc. v. O'Connor*, 364 Md. 143, 771 A.2d 1072 (2001).[2] Coffee sought judicial review of this decision in the Circuit Court for Baltimore City. The court affirmed the Commission. Coffee then appealed to the Court of Special Appeals, but before the intermediate appellate court could rule, we granted Rent-A-Center's Petition for Writ of Certiorari.

---

[2] Discussed *infra*.

4

Although each petitioner phrases the question differently, each case asks us to decide the following question:

> When crediting an Employer/Insurer for payments made under a workers' compensation award that is subsequently amended, should credit be given for the number of weeks paid under the initial award, or should credit be given for the total dollar amount paid under the initial award?

For the following reasons, we hold that in such situations, credit should be given for the total amount of dollars paid under the initial award.

## DISCUSSION

The Employers make two primary arguments regarding their assertion that they should be credited on a weeks-paid basis. First, they claim that the broad purpose and language of the Workers' Compensation Act (the "Act") supports a weeks-paid crediting regime. Second, the Employers argue that our previous case law explicitly and consistently upholds a crediting for the number of weeks paid when considering changes in workers' compensation awards.

The Workers counter with two primary arguments. First, they argue that Md. Code (1991, 2008 Repl. Vol.), § 9-633 of the Labor and Employment Article ("LE") unambiguously requires that credit for payments made be calculated in terms of the total dollar amount paid. Second, they argue that the legislative history supports a clear legislative intent that the crediting be done in terms of the total dollar amount paid. We address these arguments in turn.

5

The Employers argue that LE § 9-633[3] must be interpreted consistently with the Act as a whole. They reason that because the provisions that set out the payment schedule for permanent partial disability, LE §§ 9-626 through 9-630, express payment schedules in terms of weeks payable, the units of compensation contemplated by the Act are weekly in nature. The Employers point to the title of LE § 9-627—"Duration of compensation"—for further proof that the payment of benefits under the Act is fundamentally computed in terms of weeks. As Rent-A-Center explains,

> The Legislature intended tha[t] an injured employee receive benefits for his injury for a duration that is proportionate to his injury. The dollar amounts of those benefits are calculated pursuant to the duration of weeks and are based on factors including the date of the injury and how much the employee was making at the time of his injury.

Thus, the Employers explain, the Act is primarily about the number of weeks an injured employee is paid, rather than the total amount of money the employee is paid.

The Employers remind us that when tasked with interpreting a statute, we have routinely explained that we must avoid illogical or unreasonable results. They argue that

---

[3] This article provides:

**Reversal or change in compensation**.
If an award of permanent partial disability compensation is reversed or modified by a court on appeal, the payment of any new compensation awarded shall be:
    (1)  subject to a credit for compensation previously awarded and paid; and
    (2)  otherwise made in accordance with this [sic] Part IV of this subtitle.

Md. Code (1991, 2008 Repl. Vol.), § 9-633 of the Labor and Employment Article.

6

it would be illogical to interpret the Act such that in all other provisions, it structures benefits around a weekly approach, but when calculating the credit for benefits already paid, it switches up to base benefits on total dollars paid. Thus, they say, the clear language of the Act as a whole, and specifically LE § 9-633, supports a weeks-paid credit calculation.

The Employers also explain that our longstanding precedent—as embodied in *Philip Electronics North America v. Wright*, 348 Md. 209, 703 A.2d 150 (1997), *superseded by statute as stated in Plein v. Department of Labor*, 369 Md. 421, 800 A.2d 757 (2002), *Ametek, Inc. v. O'Connor*, 364 Md. 143, 771 A.2d 1072 (2001), and *Del Marr v. Montgomery County*, 397 Md. 308, 916 A.2d 1002 (2007)—is that employers should be credited for the weeks they have paid under previous awards. As they explain, even after the enactment of LE § 9-633, this Court held in *Del Marr* that credits should be calculated in terms of weeks. The Employers point to our holding in *Del Marr* in which we stated that "a modification that serves to increase or decrease compensation, whether occasioned by . . . judicial review . . . or a reopening, may have prospective effect only, achieved by allowing a credit for compensation previously paid calculated on a weekly basis." 397 Md. at 320, 916 A.2d at 1008. Additionally, the Employers explain that *Del Marr* rejected the argument that the enactment of LE § 9-633 overturns *Philip Electronics* and *Ametek*. *Id*. at 317–18, 916 A.2d at 1007. The Employers urge us to follow this line of precedent.

The Workers argue that LE § 9-633 is clear and unambiguous in providing that credit for payments made under an amended award should be done in reference to total

7

dollars paid. They explain that LE § 9-101(e)(1) defines "compensation" as "the money payable under this title to a covered employee or the dependents of a covered employee." Furthermore, the Workers argue that the "ordinary, popular understanding" of the word "compensation" refers to money. Because it is this Court's role to use the "[o]rdinary, popular understanding of the English language . . . [when] interpret[ing] . . . the plain language of the text of a statute[,]" the Workers urge us to hold that compensation refers to money in LE § 9-633. *See Stachowski v. Sysco Food Servs. of Baltimore, Inc.*, 402 Md. 506, 516, 937 A.2d 195, 200 (2007). The Workers remind us that we have held that "[i]f the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction." *See Lockshin v. Semsker*, 412 Md. 257, 275, 987 A.2d 18, 28–29 (2010) (citations omitted). Because LE § 9-633 is unambiguous, argue the Workers, we need not engage in any statutory construction. Rather, we should follow the clear and unambiguous meaning of the statute and hold that credits should be applied in terms of total dollars paid.

The Workers also argue that because the legislative history clearly demonstrates the intent to enact a dollars-crediting regime, we should conform our holding to that intent. They present three sources of legislative intent meant to buttress their position. First, they present the Senate Finance Committee's report on House Bill 1278 ("HB 1278")—the Bill that would become LE § 9-633. This report construed HB 1278 as providing that "if an award of permanent partial disability under the State's workers' compensation laws is reversed or modified by a court on appeal, the payment of any new

8

compensation awarded will be subject to a credit for compensation previously awarded and paid." The Workers argue that because this Senate Finance Committee report summarizes HB 1278 as putting forth "a dollar credit, as opposed to a number of weeks paid credit," it is clear that the Legislature meant this bill to enact a dollars-paid crediting regime. The Workers then refer us to the Maryland Chamber of Commerce legislative position memo on the subject, which issued a favorable report on HB 1278. This memo summarized HB 1278 as requiring "employers to be credited for the amount of workers' compensation dollars previously paid, rather than the number of weeks paid, in those instances where a permanent partial disability award is reversed or modified[.]" After summarizing this Court's holdings in *Philip Electronics* and *Ametek*, the Maryland Chamber of Commerce explained that "HB 1278 imposes a consistent method for crediting the employer for benefits previously paid; that method is to credit dollars and not weeks." Finally, the Workers direct us to the legislative testimony of William Kress, who spoke on behalf of The Alliance of American Insurers. Kress's testimony explains that "House Bill 1278 will require all credits to be calculated based upon the actual dollar amount of benefits paid out to the Claimant." The Workers argue that these three pieces of legislative history demonstrate that it was the intent of the Legislature, and the understanding of all the parties who commented on the bill, that LE § 9-633 was intended to create a dollars-paid crediting system.

### *Analysis*

The Commission is an adjudicatory administrative agency. *See W.M. Schlosser Co. v. Uninsured Employers' Fund*, 414 Md. 195, 204, 994 A.2d 956, 961 (2010). Thus,

9

in our review we look through the decisions of the circuit courts and intermediate appellate court, and evaluate the agency decision directly. *See Frey v. Comptroller of the Treasury*, 422 Md. 111, 136–37, 29 A.3d 475, 489–90 (2011). As we explained in *Board of Physician Quality Assurance v. Banks*, "[a] court's role in reviewing an administrative agency adjudicatory decision is narrow[;] it 'is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.'" 354 Md. 59, 67–68, 729 A.2d 376, 380 (1999) (quoting *United Parcel Service, Inc. v. People's Counsel of Baltimore Cnty.*, 336 Md. 569, 576–77, 650 A.2d 226, 230 (1994)). Additionally, "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Banks*, 354 Md. at 69, 729 A.2d at 381 (citations omitted). This deference is nullified here by the conflicting decisions the Commission has rendered in interpreting this facet of the Act. Because of the mixed signals sent by the Commission, we will determine, without deference to the Commission, whether any of the Commission's decisions are premised on an erroneous application of LE § 9-633.

When engaging in statutory construction,

> [W]e begin our analysis by reviewing the pertinent rules. Of course, the cardinal rule is to ascertain and effectuate legislative intent. To this end, we begin our inquiry with the words of the statute and, ordinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we end our inquiry there also.

10

*Chesapeake and Potomac Tel. Co. of Maryland v. Dir. of Fin. for the Mayor and City Council of Baltimore*, 343 Md. 567, 578, 683 A.2d 512, 517 (1996) (citations omitted). If our review of the statute does turn up ambiguous language, "the job of this Court is to resolve that ambiguity in light of the legislative intent, using all the resources and tools of statutory construction at our disposal." *Price v. State*, 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003) (citations omitted). We have found an ambiguity in statutory language where there exist "two or more reasonable alternative interpretations of the statute." *Id.* (citation omitted). It is only when faced with this ambiguity that we will inquire beyond the literal meaning of the statutory language, and delve into legislative history.

Thus, our first task is to determine whether the use of the term "compensation" in LE § 9-633 is ambiguous. LE § 9-633 states that amended or modified awards will be paid "subject to a credit for compensation previously awarded and paid[.]" The definitional section of the Act defines "compensation" as "the money payable under this title to a covered employee or the dependents of a covered employee." LE § 9-101(e)(1). We have explained that "[w]hen the statute provides definitions of a particular term, we use the statutory definition in determining the scope of the specific words used." *Bryant v. State*, 393 Md. 196, 202, 900 A.2d 227, 231 (2006) (citing *Gilmer v. State*, 389 Md. 656, 667, 887 A.2d 549, 556 (2005) ("The decision whether to utilize a plain meaning analysis or an analysis based upon the ambiguity of a statute is made first by looking to see whether the Legislature has provided a definition for the term in question.")). Here, the Legislature has defined "compensation" in the Workers' Compensation statute,

11

rendering the term, as employed in LE § 9-633, unambiguous. It is clear that the General Assembly intended LE § 9-633 to employ terminology in concert with the definitional provisions laid out in LE § 9-101.

Because the Legislature intended "compensation" to mean "money" in LE § 9-633, the statute requires a total dollars-paid crediting system. When we incorporate the statutory definition of compensation from LE § 9-101 into LE § 9-633, the statute explains that payment under an amended award shall be made:

> (1) subject to a credit for [money payable under this title to a covered employee or the dependents of a covered employee] previously awarded and paid[.]

LE § 9-633. Because the statute clearly contemplates crediting employers for money previously awarded and paid, this crediting should be measured in terms of total dollars paid.

The Employers' argument that "compensation" unambiguously dictates that an employer is to be credited based on weeks previously paid is unavailing. They point to the title of LE § 9-633, as well as the Act's structure, which "makes sure that an employee is compensated for each of the weeks during which he was, or will be, disabled due to his work-related injury. . . ." To be sure, much of the Act is couched in terms of payment over a period of weeks, and a duration determination is an essential part of any permanent partial disability award. Indeed, were we to find the term "compensation" to be ambiguous, the context of the statute as a whole would be one of the tools we would use to divine how the term should be defined. *See Kaczorowski v. Mayor and City*

*Council of Baltimore*, 309 Md. 505, 514, 525 A.2d 628, 632 (1987). Yet we are not faced with an ambiguous statute, and so need not use such contextual analysis.

Similarly unavailing is the Employers' argument that this Court has held, albeit before LE § 9-633 was enacted, that crediting should be done on the basis of weeks paid. Each of the cases the Employers rely upon can be readily distinguished from the three cases before us today.

In *Philip Electronics*, we held that the language of the Act as it then existed "clearly and unambiguously demonstrate[d] a legislative commitment to the payment of permanent partial disability benefits within a weekly framework." 348 Md. at 218, 703 A.2d at 154. In that case we dealt with an injured worker whose award decreased in both duration and weekly payment after the initial award was appealed. *Id.* at 213, 703 A.2d at 152. Where Wright had initially been awarded $178 per week for 333 weeks, on appeal her award was decreased to $144 per week for 200 weeks. *Id.* Before litigation as to the appropriate calculation of credit for payments already made, Philip Electronics had already paid Wright $32,772. *Id.* at 214, 703 A.2d at 152. The amended award totaled $28,800. *Id.* Yet, under the amended award, Philip Electronics would still have to make 53 more weekly payments. *Id.* Philip Electronics argued that it should get credit for the total amount of benefits paid rather than be required to make additional weekly payments when it had already paid in excess of the total amount contemplated by the amended award. *Id.* We disagreed, and held that "an approach focusing only upon the total amount of money paid to a claimant is inconsistent with the purposes of the Act." *Id.* at 215, 703 A.2d at 153.

13

In *Ametek* we considered whether the rule from *Philip Electronics* extended to situations in which a worker's award was increased. *Ametek*, 364 Md. at 144, 771 A.2d at 1073. In that case, O'Connor was initially awarded $81 per week for 50 weeks. *Id.* at 145, 771 A.2d at 1073. On judicial review, O'Connor received an amended award of $134 per week for 467 weeks. *Id.* During the appeals process, Ametek had already paid the initially required 50 weeks at the rate of $81 per week. *Id.* O'Connor argued that she was entitled to the total amount of the award contemplated by the amended award. *Id.* Thus, she reasoned, Ametek should be credited for the $4,050 it paid rather than the 50 weeks over which it had made the payments. *Id.* We disagreed, and held that the weeks-paid calculation rule announced in *Philip Electronics* also applies when an award is adjusted upward. *Id.* at 159, 771 A.2d at 1081. We explained that "[i]t simply will not do to have different rules, depending upon whether it is the claimant or the employer to whom the result is inequitable." *Id.*

These cases do not grant the Employers the support they seek. *Philip Electronics* and *Ametek* were both filed before LE §9-633 took effect. Article III, § 31 of the Maryland Constitution provides that "[a] [l]aw passed by the General Assembly shall take effect the first day of June next after the session at which it may be passed, unless it be otherwise expressly declared therein or provided for in this Constitution." Md. Const. art. III, § 31. The bill that created LE § 9-633 had an effective date of October 1, 2001. *Philip Electronics* was filed December 12, 1997 and *Ametek* was filed May 10, 2001. As we explained in *Hardy v. State*, 301 Md. 124, 132, 482 A.2d 474, 478 (1984), "there is a presumption against statutory preemption of the common-law. This presumption is easily

14

dissipated if the statute expressly overrides a common-law principle." Here, LE § 9-633 does expressly override the rule we announced in *Philip Electronics* and *Ametek*. Thus, the statute abrogates our previous holdings that crediting is to be done on the basis of weeks paid.

We most recently addressed the question of how credit is to be applied when a new compensation award is entered in *Del Marr*. This case arose in a different context from the previous two because the change in Del Marr's award was premised on a worsening of his condition. *Del Marr*, 397 Md. at 313, 916 A.2d at 1004. Del Marr was initially determined to have suffered a 20% industrial loss of use of his body, half of which was due to the workplace accident, and half of which was due to a preexisting condition. *Id.* at 312, 916 A.2d at 1004. The Commission awarded Del Marr $114 per week for 50 weeks. *Id.* Del Marr later underwent corrective surgery and, pursuant to a stipulation by the parties, the Commission amended its award to a 24% industrial loss, with 14% disability attributed to the accident. *Id.* at 313, 916 A.2d at 1004. This meant an increase in the award to $114 per week for 70 weeks. *Id.* Because this increase only affected the duration of payments, there was no question as to how to credit previous payments. *Id.* Sometime later, Del Marr filed a petition to reopen the case to reflect his worsening condition. *Id.* The Commission entered a new award, this time finding that Del Marr had a 33% industrial loss of use of the body, with 23% being due to the injury. *Id.* The Commission set the new award at $223 per week for 115 weeks to follow the previous award and was subject to a credit for previous payments made. *Id.* We were asked to determine whether the credit should be calculated according to the money paid

15

under the previous award or the number of weeks during which the payments were made. *Id.* at 314, 916 A.2d at 1005. Applying *Philip Electronics* and *Ametek*, we held that the crediting should be done on a weeks-paid basis. *Id.* at 319–20, 916 A.2d at 1008.

*Del Marr* is distinguishable from these cases because, unlike the modification on appeal here, it involved a reopening of the case due to a worsening of Del Marr's condition after the award had been set. *Id.* at 313–14, 916 A.2d at 1004. "Reopenings" are governed by LE § 9-736, instead of § 9-633. LE § 9-736 provides that:

> If aggravation, diminution, or termination of disability takes place or is discovered after the rate of compensation is set or compensation is terminated, the Commission, on the application of any party in interest or on its own motion, may: (1) readjust for future application the rate of compensation; or (2) if appropriate, terminate the payments.

In considering the appropriate rate at which the employer should be credited for payments made under the original award, we held that "[t]he weekly credit approach is fully consistent with the legislative scheme that the employer pay compensation at the appropriate statutory rate for the disability that exists at the time the compensation is paid." *Del Marr*, 397 Md. at 318–19, 916 A.2d at 1007. Where there is a worsening of condition, as in *Del Marr*, giving credit for weeks paid accomplishes just that—the payments were appropriate for the period before Del Marr's condition worsened. But here, where there was error in the initial award, the payments were never sufficient and so a dollar adjustment is necessary.

The Employers point us to our language in *Del Marr* in which we said:

> We first note that neither § 9-630(d) nor § 9-633 state anything inconsistent with our holdings in *Philip Electronics*

16

or *Ametek*. Indeed, they are entirely consistent with the view expressed in those holdings that a modification that serves to increase or decrease compensation, whether occasioned by a judgment emanating from a judicial review action or a reopening, may have prospective effect only, achieved by allowing a credit for compensation previously paid calculated on a weekly basis. There is nothing in the text of those statutes requiring a conclusion that the weekly credit approach is impermissible in a modification arising from a reopening that increases the compensation from a first tier to a second tier. Absent some clearer expression of legislative intent, we are not willing to balkanize the Workers' Compensation Law by creating special pigeonholes with different rules.

*Id.* at 319–20, 916 A.2d at 1008. They argue that this language demonstrates that this Court has "addressed § 9-633's impact on the credit awarded when a workers' compensation award is modified by some scheme and found, consistent with its earlier decisions, that the credit is to be awarded by weeks[,] not dollars." We disagree. The question of the meaning of "compensation" under § 9-633 was not before us in *Del Marr*, and our observation regarding § 9-633 was made in the context of responding to Del Marr's argument that a dollars approach was appropriate in that reopening case. As the above language makes clear, we were only faced with the question of whether "the weekly credit approach is impermissible in a modification arising **from a reopening**[.]" *Del Marr*, 397 Md. at 320, 916 A.2d at 1008 (emphasis added).

In sum, *Del Marr* is inapposite and under the plain meaning of LE § 9-633, the employer shall be credited with "compensation previously awarded and paid." The word "compensation" means "money payable" as defined in LE § 9-101. Therefore, we hold that when crediting an Employer/Insurer for payments made under an award after the

17

award is modified on appeal, credit should be given for the total dollars paid, not the total weeks paid.

**IN CASES NO. 82 AND 91, JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, COSTS TO BE PAID BY EMPLOYERS W. R. GRACE & CO AND FLORIDA ROCK INDUSTRIES, INC.**

**IN CASE NO. 92, JUDGMENT FOR THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED, WITH INSTRUCTIONS TO REVERSE THE COMMISSION AND COMPEL CREDITING ON THE BASIS OF TOTAL DOLLARS PAID. COSTS TO BE PAID BY EMPLOYER RENT-A-CENTER.**